# EXHIBIT A

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK :: COMMERCIAL DIVISION
– – – – – – – – – – – – – – – – – – – – – – – – – – – – – x

I.B.I VOLCANO INVESTMENTS LLC,        :

                Plaintiff,      :

      - against -        :

MARIO GARCIA, JR., MARK LEVEY, ROBERT     :
WINSLOW,

                Defendants.      :
– – – – – – – – – – – – – – – – – – – – – – – – – – – – – x

**SUMMONS**

Plaintiffs designate New York County as the place of the trial pursuant to written agreement of the parties and CPLR § 501.

: Index No.:

To the above-named Defendants:

**PLEASE TAKE NOTICE THAT YOU ARE HEREBY SUMMONED** to answer the

Motion for Summary Judgment in Lieu of Complaint of the Plaintiffs herein and to serve a copy

of your answer on the Plaintiffs at the address indicated below within 30 days after the service of

this Summons (not counting the day of service itself), or after service is complete if the

Summons is not delivered personally to you within the State of New York.

**YOU ARE HEREBY NOTIFIED THAT** should you fail to answer, a judgment will be

entered against you by default for the relief demanded in the Motion for Summary Judgment.

Dated:      August 5, 2025
           New York, New York

              BRYAN CAVE LEIGHTON PAISNER LLP

         By:     /s/ Chris LaRocco
                 Chris LaRocco
                 Anoop Sadanandan
             1290 Avenue of the Americas
             New York, New York 10104
             (212) 541-2000
             chris.larocco@bclplaw.com
             anoop.sadanandan@bclplaw.com
             *Attorneys for Plaintiffs*

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK :: COMMERCIAL DIVISION
— — — — — — — — — — — — — — — — — — — — — — — — — — — — x

I.B.I VOLCANO INVESTMENTS LLC,                          :

       Plaintiff,          :  NOTICE OF MOTION
              FOR SUMMARY
    - against -                    :  JUDGMENT IN LIEU
              OF COMPLAINT
MARIO GARCIA, JR., MARK LEVEY, ROBERT          :
WINSLOW,

             :  Index No.:
       Defendants.
— — — — — — — — — — — — — — — — — — — — — — — — — — — — x

   **PLEASE TAKE NOTICE** that, upon the Summons, dated August 5, 2025, the

Affirmation of Ziv Sapir, dated August 5, 2025, the Memorandum of Law dated August 5, 2025,

and all proceedings had herein, the undersigned will move this Court at the Motion Submissions

Part Courtroom (Room 130) at the Courthouse located at 60 Centre Street, New York, New York

10007 on October 27, 2025 at 9:30 a.m., or as soon thereafter as counsel can be heard, for an

Order, pursuant to CPLR § 3213, for a summary judgment in lieu of complaint, upon the ground

that this action is based upon an instrument for the payment of money only and there is no

defense to the action, in favor of Plaintiffs and against Defendants for $2,527,829.00, plus

attorneys' fees, together with the costs and disbursements of this action, and for such other and

further relief as the Court deems just and proper.

   **PLEASE TAKE FURTHER NOTICE** that, pursuant to CPLR §§ 2215 and 3213,

answering papers and a notice of cross-motion with supporting papers, if any, must be served

upon the undersigned within thirty (30) days after the service of the Summons and this Notice

of Motion, exclusive of the day of service, or after the service is complete if the Summons and

this Notice of Motion were not personally delivered to you within the State of New York.

Case 1:25-cv-07928    Document 1-1    Filed 09/24/25    Page 4 of 79

Dated:     August 5, 2025
           New York, New York

BRYAN CAVE LEIGHTON PAISNER LLP

By:    /s/ Chris LaRocco
       Chris LaRocco
       Anoop Sadanandan
     1290 Avenue of the Americas
     New York, New York 10104
     (212) 541-2000
     chris.larocco@bclplaw.com
     anoop.sadanandan@bclplaw.com

     *Attorneys for Plaintiff*

Case 1:25-cv-07928    Document 1-1    Filed 09/24/25    Page 5 of 79

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK

– – – – – – – – – – – – – – – – – – – – – – – – – – – – – – x

I.B.I VOLCANO INVESTMENTS LLC,                    :

                                      Plaintiff,   :    AFFIRMATION OF ZIV SAPIR IN
                                                        SUPPORT OF PLAINTIFF'S MOTION
                        - against -                :    FOR SUMMARY JUDGMENT IN LIEU
                                                        OF COMPLAINT
MARIO GARCIA, JR., MARK LEVEY, ROBERT              :
WINSLOW,                                                Index No.:
                                                   :
                                      Defendants.  :
                                                   :
– – – – – – – – – – – – – – – – – – – – – – – – – – – – – – x

Ziv Sapir hereby affirms as follows:

1.      I am the Principal of I.B.I Volcano Investments LLC ("I.B.I. Volcano" or

"Lender"), the plaintiff in the above-entitled action. I am familiar with the facts and

circumstances stated herein based upon my own personal knowledge and review of business

records generated and maintained in the ordinary course of I.B.I. Volcano's business.

2.      I make this Affirmation in support of I.B.I. Volcano's Motion for Summary

Judgment in Lieu of Complaint.

3.      I.B.I. Volcano is a Delaware limited liability company with an office at Shalom

Tower, 18th Floor, 9 Ahad Ha'am Street, 65251 Tel Aviv, Israel.

4.      Upon information and belief, defendant Mario Garcia, Jr. is an individual and

resident of the State of Florida.

5.      Upon information and belief, defendant Mark Levey is an individual and resident

of the State of Florida.

6.      Upon information and belief, defendant Robert Winslow is an individual and

resident of the State of Florida.

FILED: NEW YORK COUNTY CLERK 08/05/2025 01:06 PM
NYSCEF DOC. NO. 3
Case 1:25-cv-07928    Document 1-1    Filed 09/24/25    Page 6 of 79

7.      Attached hereto as Exhibit 1 is a true and correct copy of that certain Secured Promissory Note ("Note") dated June 12, 2024, between I.B.I. Volcano and non-party Validus Broker Dealer Investment Management Company, LLC, a Florida limited liability company ("Borrower").

8.      Attached hereto as Exhibit 2 is a true and correct copy of that certain Security and Pledge Agreement dated June 12, 2024, between I.B.I. Volcano and Borrower.

9.      Attached hereto as Exhibit 3 is a true and correct copy of that certain Guaranty agreement (the "Guaranty") dated June 12, 2024, executed by Mario Garcia, Jr., Mark Levey, and Robert Winslow (together, the "Guarantors"), for the benefit of I.B.I Volcano.

10.      The Maturity Date under the Note was initially December 12, 2024, but Borrower made an extension payment pursuant to the Note (Ex. 1, § B(4)), extending the Maturity Date to June 12, 2025.

11.      Borrower made interest payments (though often late) under the Note until May 23, 2025, but has failed to make the interest payment due in June 2025 and has made no further interest payments since.

12.      Borrower failed to pay off the balance of the loan due on or before the Maturity Date under the Note.

13.      Attached hereto as Exhibit 4 is a true and correct copy of the Notice of Default, Demand for Payment, Notice of Initiation of Litigation and Notice of Reservation of Rights sent by I.B.I. Volcano (via its counsel, Bryan Cave Leighton Paisner LLP) to Guarantors on or about July 14, 2025 ("Default Notice").

14.      Guarantor has not remitted any funds due to I.B.I. Volcano within the 15-day timeframe requested in the Default Notice.

2

Case 1:25-cv-07928    Document 1-1    Filed 09/24/25    Page 7 of 79

15.     The sum requested in the Default Notice represented interest due on the Note at the time it was sent, but because the Maturity Date—June 12, 2025—has come and gone without extension or repayment from Borrower, all sums under the Note are currently due, including repayment of the principal and remaining interest, and default interest.

16.     Attached hereto as Exhibit 5 is a true and correct copy of the business record kept by I.B.I. Volcano in its regular course of business and contemporaneously updated and maintained in order to track Borrower's financial obligations pursuant to the Note. It reflects the following:

    a.  Borrower stopped making regular interest payments since May 23, 2025.

    b.  The entire principal amount is currently due and owing (as of August 4, 2025) in the amount of $2,350,000.00.

    c.  The accrued interest due on the loan, which interest is calculated at the default rate of 18% under the Note (*see* Ex. 1, §§ A, E), is currently due and owing owing (as of August 4, 2025) in the amount of $169,361.00.

    d.  Borrower is also obligated to pay late charges in connection with payments made more than ten (10) days after they were due (*id.*, § G(2)), which, as of August 4, 2025, amount to $8,468.00.

    e.  The total amount now due and owing owing (as of August 4, 2025) from Borrower is thus $2,527,829.00.

17.     The Guarantors have not remitted any funds due under the Guaranty.

18.     Thus, pursuant to the terms of the Guaranty, the Guarantors are jointly and severally liable to I.B.I. Volcano for Borrower's debt (Ex. 3, § 23) in the full amount of

Case 1:25-cv-07928    Document 1-1    Filed 09/24/25    Page 8 of 79

$2,527,829.00, plus I.B.I. Volcano's fees and expenses, including its attorneys' fees, in enforcing the Guaranty to be determined in this action.

**I affirm this** _5_ **day of August, 2025, under the penalties of perjury under the laws of New York, which may include a fine or imprisonment, that the foregoing is true, and I understand that this document may be filed in an action or proceeding in a court of law**.

DocuSigned by:

E79077CD68BE461...

Ziv Sapir

4

## SECURED PROMISSORY NOTE

Date of Note:   June 12, 2024

Amount of Note: TWO MILLION THREE HUNDRED AND FIFTY THOUSAND AND 00/100 DOLLARS ($2,350,000.00)

**FOR VALUE RECEIVED**, Validus Broker Dealer Investment Management Company, LLC, a Florida limited liability company (the "***Borrower***"), hereby covenants and promises to pay to the order of I.B.I Volcano Investments LLC, a Delaware limited liability company (the "***Lender***"), at Shalom Tower, 18th Floor, 9 Ahad Ha'am Street, 65251 Tel Aviv, Israel, or at such other place as the Lender may designate to the Borrower in writing from time to time, in legal tender of the United States, the principal amount of TWO MILLION THREE HUNDRED AND FIFTY THOUSAND AND 00/100 DOLLARS ($2,350,000.00) (the "***Loan***"), together with all accrued interest thereon, which shall be due and payable upon the following terms and conditions contained in this secured promissory note (this "***Note***").

**A.** **Interest Rate**:

Interest shall accrue on the unpaid principal balance of this Note from the date hereof at a rate per annum equal to thirteen percent (13%) (the "**Interest Rate**"), nine and one-half percent (9.5%) of which shall be payable monthly in accordance with Section B.1 (the "**Cash Interest Portion**") and three and one-half percent (3.5%) of which shall accrue monthly and be paid in full on the Maturity Date (the "**Deferred Interest Portion**"). Interest under this Note shall be calculated on the basis of a 365-day year and charged for the actual number of days elapsed; that is, by applying the ratio of the interest rate over a year of 365 days, multiplied by the outstanding principal balance, multiplied by the actual number of days the principal balance is outstanding during the period for which the interest is being calculated. All interest payable under this Note is computed using this method.

**B.** **Payment Terms; Maturity Date**:

1.      **Interest and Payments**.

        (a)      Commencing on July 1, 2024 and continuing on the first (1st) day of each month thereafter, the Borrower shall make consecutive monthly payments of accrued interest only with respect to the Cash Interest Portion.  For the avoidance of doubt, such interest payments shall be made separately and apart from payment of principal.

        (b)      The Borrower agrees to pay the principal sum of this Note, and interest on the unpaid principal sum of this Note from time to time outstanding at the rates and at the times specified herein.  Interest shall be payable at the Lender's office located at the address above, or at such other place as the Lender may designate in writing in immediately available funds in lawful money of the United States of America without set-off, deduction, or counterclaim.

        (c)      Unless otherwise agreed or required by applicable law, payments will be applied first to any accrued unpaid interest; then to any late charges; then to any unpaid collection costs; and then to principal.

ACTIVE:22451590.4

Case 1:25-cv-07928     Document 1-1     Filed 09/24/25     Page 10 of 79

2.    **Principal and Maturity Date**.  Unless this Note is otherwise accelerated in accordance with the terms and conditions hereof or extended pursuant to <u>Section B(4)</u>, the entire outstanding principal balance of this Note plus all accrued interest (including, for the avoidance of doubt, all of the Deferred Interest Portion) and all other amounts payable under this Note shall be due and payable in full on the Maturity Date.

3.    **Origination Fee**.  The Borrower shall pay the Lender a fully earned and non-refundable origination fee in an amount equal to two percent (2%) of the principal amount of the Loan (the "***Origination Fee***"), due and payable on the date hereof; *provided*, that in Lender's sole discretion, Lender may set off any unpaid portion of the Origination Fee against the proceeds of the Loan which would otherwise be payable to the Borrower, and any such set off shall have no effect on the principal amount of the Loan.

4.    **Extension of Maturity Date**.  The Borrower shall have the right to request that the Maturity Date be extended, on a one-time-only basis, for a period of six (6) months (an *"**Extension Period**"*).  The Borrower shall make such request in writing at least thirty (30) days prior to the Maturity Date.  The Maturity Date shall be extended so long as the Lender consents to such extension (in its sole discretion) and no Event of Default exists or would result therefrom, and upon the Borrower's payment to the Lender of an additional fully earned and non-refundable Origination Fee in an amount equal to two percent (2%) of the principal balance of the Loan as of the date the Extension Period is agreed.

5.    **Business Day Convention**.  Whenever any payment to be made hereunder shall be due on a day that is not a business day, such payment shall be made on the next succeeding business day and such extension will be taken into account in calculating the amount of interest payable under this Note.

**C.**    <u>Security</u>:  This Note is secured, in part, by that certain Security and Pledge Agreement of even date herewith, from the Borrower in favor of Lender (as the same may be amended, restated, supplemented or otherwise modified from time to time, the "***Security Agreement***"), granting Lender a lien and security interest in and to certain assets and personal property, as more particularly described in the Security Agreement.

**D.**    <u>**Loan Documents; Defined Terms**</u>:

1.    This Note, the Security Agreement, and that certain Guaranty of even date herewith made by Mario Garcia, Jr., Mark Levey and Robert Winslow (the "***Guarantors***") in favor of Lender (as the same may be amended, restated, supplemented, modified, or replaced from time to time, the "***Guaranty***") are hereinafter individually and/or together referred to as the "***Loan Document(s)***".  When used herein, the following terms shall have the following meanings:

"***Anti-Corruption Laws***" means all laws, rules, and regulations of any jurisdiction applicable to the Borrower from time to time concerning or relating to bribery or corruption, including the United States Foreign Corrupt Practices Act of 1977.

"***Distributions***" means all dividends and other distributions, including, without limitations, stock repurchases and redemptions, made to an owner of any Equity Interests, other than salary, bonuses, and other compensation for services expended in the current accounting period.

2

"**Equity Interests**" means equity ownership interests in a business or not for profit entity, and any warrants, options, or other rights entitling the holder thereof to purchase or acquire any such equity interest.

"**GAAP**" means generally accepted accounting principles in the United States of America as in effect from time to time.

"**Governmental Authority**" means the government of any nation or any political subdivision thereof, whether at the national, state, territorial, provincial, municipal or any other level, and any agency, authority, instrumentality, regulatory body, court, central bank or other entity exercising executive, legislative, judicial, taxing, regulatory or administrative powers or functions of, or pertaining to, government.

"**Law**" as to any Person, means the certificate of incorporation and by-laws or other organizational or governing documents of such Person, and any law (including common law), statute, ordinance, treaty, rule, regulation, order, decree, judgment, writ, injunction, settlement agreement, requirement or determination of an arbitrator or a court or other Governmental Authority, in each case applicable to or binding upon such Person or any of its property or to which such Person or any of its property is subject.

"**Lien**" means any mortgage, pledge, hypothecation, encumbrance, lien (statutory or other), charge, or other security interest.

"**Maturity Date**" means the earliest to occur of (i) December 12, 2024, (ii) the date of repayment by Schmid Group N.V. of all amounts owed to Borrower (or its applicable affiliate) pursuant to agreements entered into between Borrower and Schmid Group N.V. (or their applicable affiliates) and (iii) the date that Borrower sells any of the Pledged Equity (as defined in the Security Agreement), except as the same may be extended pursuant to Section B(4).

"**OFAC**" means the U.S. Department of the Treasury's Office of Foreign Assets Control.

"**PATRIOT Act**" means the Uniting and Strengthening America by Providing Appropriate Tools Required to Intercept and Obstruct Terrorism Act of 2001 (Title III of Pub. L. 107-56, signed into law October 26, 2001).

"**Person**" means any individual, corporation, limited liability company, trust, joint venture, association, company, limited or general partnership, unincorporated organization, Governmental Authority, or other entity.

"**Related Party**" means, which respect to the Borrower, (A) any Person that directly or indirectly controls, is directly or indirectly controlled by or is directly or indirectly under common control with the Borrower; (B) any Person that holds an Equity Interest in the Borrower; (C) each Person that serves as a director, officer, partner, executor or trustee of the Borrower (or in a similar capacity); (D) any Person in which the Borrower holds an Equity Interest; and (E) the Guarantors.

"**Sanctioned Country**" means, at any time, a country or territory which is itself the subject or target of any comprehensive or country-wide Sanctions.

3

"**Sanctioned Person**" means, at any time, (a) any Person listed in any Sanctions-related list of designated Persons maintained by a Sanctions Authority; (b) any Person operating, organized, or resident in a Sanctioned Country, (c) any Person owned or controlled by any such Person or Persons described in the foregoing clauses (a) or (b), or (d) any Person that is the subject or target of any Sanctions.

"**Sanctions**" mean all economic or financial sanctions or trade embargoes imposed, administered, or enforced from time to time by a Sanctions Authority.

"**Sanctions Authority**" means OFAC, the U.S. Department of State, the United Nations Security Council, the European Union, any EU member state, His Majesty's Treasury of the United Kingdom, Canada, or other relevant sanctions authority.

**E.** **Default Interest Rate**:  All principal and installments of interest shall bear interest from the date that said payments are due and unpaid or from the date of occurrence of any other Event of Default (as hereinafter defined) under this Note, the Security Agreement, or any other Loan Document, at a rate equal to the Interest Rate *plus* five percent (5%) (the "**Default Rate**").

**F.** **Prepayment/Prepayment Compensation**:  After the date that is three (3) calendar months after the date hereof, the Borrower may prepay all or any portion of the Loan at any time without fee, premium, or penalty.  If the Borrower prepays all or any portion of the Loan prior to such date, the Borrower shall pay to the Lender an amount equal to the interest that would have accrued on the Loan during the period from the date hereof through the date that is three (3) calendar months after the date hereof had no principal amount of the Loan been prepaid, less any interest actually paid.  No prepaid amount may be reborrowed.

**G.** **Acceptance of Late or Partial Payments; Late Charges; Rescission of Payments**:

1. **Acceptance of Late or Partial Payments**.  The Lender may accept late or partial payment of any amount due under this Note; provided, however, that acceptance of one or more late or partial payments shall not constitute a waiver of any default nor of any of the Lender's rights to receive timely payment of any other payment. Acceptance of any payment, whether partial or otherwise, after the happening or occurrence of an Event of Default and the acceleration of the due date of this Note shall not constitute a reinstatement of the pre-acceleration payment schedule, nor shall it impair any of the Lender's rights or remedies under this Note.

2. **Late Charges**.  The Lender may collect a late charge not to exceed an amount equal to five percent (5%) of any installment which is not paid within ten (10) calendar days after the due date thereof, to cover the extra expense involved in handling delinquent payments, provided that collection of said late charge shall not be deemed a waiver by the Lender of any of its rights under this Note.  The late charge is intended to compensate the Lender for administrative and processing costs incident to late payments.

3. **Rescission of Payments**.  If at any time any payment made by the Borrower under this Note is rescinded or must otherwise be restored or returned upon the insolvency, bankruptcy, or reorganization of the Borrower or otherwise, the Borrower's obligation to make such payment shall be reinstated as though such payment had not been made.

ACTIVE:22451590.4

**H.**    **Representations and Warranties**: The Borrower hereby represents and warrants to the Lender that:

    1.    **Existence; Power and Authority; Compliance with Laws**. The Borrower (a) is a limited liability company duly formed, validly existing, and in good standing under the laws of the state of its jurisdiction of organization; (b) has the requisite power and authority, and the legal right, to own, lease, and operate its properties and assets and to conduct its business as it is now being conducted, to execute and deliver this Note and the other Loan Documents to which it is a party, and to perform its obligations hereunder and thereunder; and (c) is in compliance with all Laws.

    2.    **Authorization; Execution and Delivery**. The execution and delivery by the Borrower of this Note and the other Loan Documents to which it is a party and the performance of its obligations hereunder and thereunder have been duly authorized by all necessary limited liability company action in accordance with all applicable Laws. The Borrower has duly executed and delivered this Note and the other Loan Documents to which it is a party.

    3.    **No Approvals**. No consent or authorization of, filing with, notice to, or other act by, or in respect of, any Governmental Authority or any other person is required in order for the Borrower to execute, deliver, or perform any of its obligations under this Note or the other Loan Documents to which it is a party.

    4.    **No Violations**. The execution and delivery by the Borrower of this Note and the other Loan Documents to which it is a party and the consummation by the Borrower of the transactions contemplated hereby and thereby do not and will not (a) violate any Law applicable to the Borrower or by which any of its properties or assets may be bound; or (b) constitute a default under any material agreement or contract by which the Borrower may be bound.

    5.    **Enforceability**. Each of this Note and each other Loan Document to which the Borrower is a party is a valid, legal, and binding obligation of the Borrower, enforceable against the Borrower in accordance with its terms, except as enforceability may be limited by applicable bankruptcy, insolvency, reorganization, moratorium, or similar laws affecting the enforcement of creditors' rights generally and by general equitable principles (whether enforcement is sought by proceedings in equity or at law).

    6.    **Investments; Liabilities; Other Obligations**. Except as set forth on <u>Schedule H(6)</u>, (a) the Borrower has no indebtedness, liabilities, or other obligations owing to any Person and (b) none of the Borrower's property or assets is subject to any Lien.

    7.    **Purpose**. The Borrower shall use the Loan solely for the purpose of funding business operations of the Borrower in the ordinary course and to pay closing costs in connection with the Loan (the "***Purpose***").

    8.    **No Litigation**. No action, suit, litigation investigation, or proceeding of, or before, any arbitrator or Governmental Authority is pending or, to the knowledge of the Borrower, threatened by or against the Borrower, its Manager, its members or any of the Borrower's property or assets (a) with respect to this Note, the other Loan Documents, or any of the transactions contemplated hereby or thereby or (b) that could be expected to materially adversely affect the Borrower's financial condition or the ability of the Borrower to perform its obligations under this Note or the other Loan Documents to which it is a party.

ACTIVE:22451590.4

9.      **PATRIOT Act; Anti-Money Laundering**.  The Borrower is, and to the knowledge of the Borrower, its directors, officers, employees, and agents are, in compliance in all material respects with the PATRIOT Act, and any other applicable terrorism and money laundering laws, rules, regulations, and orders.

10.      **Anti-Corruption Laws and Sanctions**.

(a)      The Borrower has implemented and maintains in effect policies and procedures designed to ensure compliance in all material respects by the Borrower and its directors, officers, employees, and agents with Anti-Corruption Laws and applicable Sanctions and the Borrower is, and to the knowledge of the Borrower, its directors, officers, employees, and agents are, in compliance with Anti-Corruption Laws and applicable Sanctions.

(b)      The Borrower is not, and to the knowledge of the Borrower, no director, officer, employee of the Borrower, or any agent of the Borrower that will act in any capacity in connection with or benefit from the Loan, is a Sanctioned Person.

(c)      No use of proceeds of the Loan or other transaction contemplated by this Note will violate any Anti-Corruption Law or applicable Sanctions.

11.      **Solvency**.  Borrower has cash on hand sufficient to satisfy all of the payment obligations of Borrower under this Note, including payment of the Loan at maturity and all interest hereunder and all related fees and expenses payable by Borrower under this Note or any other Loan Document. Borrower (1) is solvent, (2) is able to pay its debts as they become due, (3) owns property that has a fair saleable value greater than the amounts required to pay its debts (including a reasonable estimate of the amount of all continent liabilities), and (4) has adequate capital to carry on its business. Borrower is not making any transfer of property in connection with this Note with the intent to hinder, delay, or defraud either present or future creditors of Borrower or any of its affiliates.

12.      **Insurance**.  Annex I hereto sets forth each of the existing insurance policies maintained by the Borrower (the "***Insurance Policies***").  Such Insurance Policies are in full force and effect on the date hereof and all premiums due on such Insurance Policies have been paid.

I.      <u>**Affirmative Covenants**</u>:  Until all amounts outstanding under this Note have been paid in full, the Borrower shall:

1.      **Maintenance of Existence**.  (a) Preserve, renew, and maintain in full force and effect its corporate or organizational existence and (b) take all reasonable action to maintain all rights, privileges, and franchises necessary or desirable in the normal conduct of its business.

2.      **Compliance**.  (a) Comply with all Laws applicable to it and its business and its obligations under its material contracts and agreements and (b) maintain in effect and enforce policies and procedures reasonably designed to achieve compliance in all material respects by the Borrower and its directors, officers, employees and agents with Anti-Corruption Laws and applicable Sanctions.

3.      **Payment Obligations**.  Pay, discharge, or otherwise satisfy at or before maturity or before they become delinquent, as the case may be, all its material obligations of whatever nature, except where the amount

6

or validity thereof is currently being contested in good faith by appropriate proceedings, and reserves in conformity with GAAP with respect thereto have been provided on its books.

4.      **Notice of Events of Default**.  As soon as possible and in any event within two (2) business days after it becomes aware that an Event of Default has occurred, notify the Lender in writing of the nature and extent of such Event of Default and the action, if any, it has taken or proposes to take with respect to such Event of Default.

5.      **Reporting Requirements**.  Provide Lender with monthly financial reports, containing any material reasonably requested by the Lender, including without limitation details with respect to fund raising and/or syndication efforts, as applicable.  Such reports shall be due to the Lender within fifteen (15) days of month's end.

6.      **Insurance Policies**.  Promptly following the date hereof (and in any event within 15 business days), amend each of the Insurance Policies to name Lender as an additional insured and related notice party thereunder.

7.      **Further Assurances**.  Upon the request of the Lender, promptly execute and deliver such further instruments and do or cause to be done such further acts as may be necessary or advisable to carry out the intent and purposes of this Note and other Loan Documents.

**J.      <u>Negative Covenants</u>**:  Until all amounts outstanding under this Note have been paid in full, the Borrower shall not, without the prior written consent of the Lender:

1.      **Indebtedness**.  Incur, create, assume, or permit to exist any indebtedness, except for indebtedness incurred pursuant to this Note.

2.      **Liens**.  Incur, create, assume, or suffer to exist any Lien on any of its property or assets, whether now owned or hereafter acquired, except for (a) Liens for taxes not yet due or which are being contested in good faith by appropriate proceedings if adequate reserves with respect thereto are maintained on the books of the Borrower in conformity with GAAP; and (b) Liens created pursuant to the Security Agreement or the Guaranty.

3.      **Investments**.  Purchase, hold, or acquire any Equity Interest or evidence of indebtedness of, make or permit to exist any loans or advances to, permit to exist any receivable from, or make or permit to exist any investment or acquire any interest whatsoever in, any Person, except: (a) extensions of trade credit to customers in the ordinary course of business on ordinary terms; (b) commercial paper, certificates of deposit, US Treasury, or other governmental agency obligations; and (c) loans, advances, investments, and receivables existing as of the date of this Note that have been disclosed to and approved by Lender in writing and that are not to be paid with proceeds of the Loan.

4.      **Distributions and Related Party Payments**.  Redeem, retire, purchase, or otherwise acquire, directly or indirectly, any of its Equity Interests (including without limitation any warrants issued by the Borrower), return any contribution to any owner of its Equity Interests, declare or pay any Distributions, or otherwise may any payments of any kind to any Related Party.

7

5.      **Management Fees**.  Make any payment, directly or indirectly, of any management fees or any similar type of payment to any Person, including without limitation the Guarantors.

6.      **Dispositions**.  Sell, lease, transfer, or otherwise dispose of any of its assets other than in the ordinary course.

7.      **Loan to Value**. Permit the Loan-to-Value Ratio to exceed forty percent (40%). The "***Loan-to-Value Ratio***" as used herein means the fraction, expressed as a percentage, the numerator of which is the principal amount of the Loan *plus* all indebtedness of Borrower that is senior to, or *pari passu* with, the Loan (if any), and the denominator of which is the total value of the Pledged Equity (as defined in the Security Agreement).  If the Loan-to-Value Ratio exceeds forty percent (40%) at any time prior to repayment in full of all amounts outstanding under this Note, Borrower shall as promptly as practicable (and in any event within one (1) business day) sell the Pledged Equity and the proceeds thereof shall immediately be remitted to Lender towards satisfaction of the Loan.

8.      **Line of Business**.  Enter into any business, directly or indirectly, except for those businesses in which the  Borrower is engaged on the date of this Note or that are reasonably related thereto; or use the amounts provided by Lender for any purpose other than the Purpose.

9.      **Warranty Agreement**.  Amend or modify (and Borrower shall cause its affiliates not to amend or modify) that certain Warranty Agreement, dated as of April 29, 2024, by and among (i) Pegasus Digital Mobility Acquisition Corp., (ii) Gebr. Schmid GmbH, (iii) Pegasus TopCo B.V. and (iv) Pegasus MergerSub Corp (the "***Warranty Agreement***").

**K.      Default; Remedies and Acceleration**:  If any of the following (each, an "***Event of Default***") occur, at the Lender's option, exercisable in its sole discretion, all sums of principal and interest under this Note shall be accelerated and become immediately due and payable without notice (except where expressly provided, in which case notice shall first be provided), presentment or demand for payment, protest or notice of nonpayment or dishonor, or other notices or demands of any kind or character, and the Lender shall be immediately entitled to exercise all of its available remedies under the Loan Documents and applicable law:

1.      The Borrower fails to pay (a) any principal amount of the Loan when due; or (b) interest or any other amount due and owing hereunder when due and, in either case, if such failure continues for five (5) calendar days.

2.      The Borrower fails to observe or perform any other covenant, obligation, condition, or agreement contained in this Note or any other of the Loan Documents and such failure continues for a period of thirty (30) days following receipt of written notice from the Lender; provided, however, if the nature of the failure is such that more than thirty  (30) days are required for its cure, then no Event of Default shall exist under this Note if the Borrower commences such cure within said thirty (30) day period (and provides written notice thereof to Lender) and thereafter diligently pursues such cure to completion.

3.      Any representation or warranty made or deemed made by the Borrower in any Loan Document furnished to the Lender in connection with the Loan proves materially false or incorrect, or if of a continuing nature, becomes materially false.

4.      The Loan-to-Value Ratio exceeds forty percent (40%).

ACTIVE:22451590.4

5.      The Borrower fails to pay when due any of its material indebtedness (other than indebtedness under this Note) or any interest or premium thereon when due (whether by scheduled maturity, acceleration, demand, or otherwise) and such failure continues after the applicable grace period, if any, specified in the agreement or instrument relating to such indebtedness.

6.      **Bankruptcy**.

(a)      The Borrower commences any case, proceeding or other action (i) under any existing or future Law relating to bankruptcy, insolvency, reorganization, or other relief of debtors, seeking to have an order for relief entered with respect to it, or seeking to adjudicate it as bankrupt or insolvent, or seeking reorganization, arrangement, adjustment, winding-up, liquidation, dissolution, composition, or other relief with respect to it or its debts, or (ii) seeking appointment of a receiver, trustee, custodian, conservator or other similar official for it or for all or any substantial part of its assets, or the Borrower makes a general assignment for the benefit of its creditors;

(b)      any case, proceeding or other action of a nature referred to in clause (a) above is commenced against the Borrower and (i) results in the entry of an order for relief or any such adjudication or appointment or (ii) remains undismissed, undischarged, or unbonded for a period of sixty (60) days;

(c)      any case, proceeding or other action is commenced against the Borrower, which case, proceeding or other action is seeking issuance of a warrant of attachment, execution or similar process against all or any substantial part of its assets which results in the entry of an order for any such relief which has not been vacated, discharged, or stayed or bonded pending appeal within twenty (20) days from the entry thereof;

(d)      The Borrower takes any action in furtherance of, or indicating its consent to, approval of, or acquiescence in, any of the acts set forth in clause (a), (b) or (c) above; or

(e)      The Borrower is generally not, or is unable to, or admits in writing its inability to, pay its debts as they become due.

7.      **Judgments**.  A judgment or decree for an amount in excess of $25,000 is entered against the Borrower and such judgment or decree has not been vacated, discharged, stayed, or bonded pending appeal within thirty (30) days from the entry thereof.

Upon an Event of Default and while it is continuing, the Lender shall have the right to accelerate this Note, whereupon all sums of principal under this Note, together with all accrued interest thereon and all other amounts payable hereunder, shall automatically become immediately due and payable without notice of default (except where otherwise expressly provided, in which case notice shall first be provided), presentment or demand for payment, protest or notice of nonpayment or dishonor, or other notices or demands of any kind or character. All persons now or at any time liable for payment of this Note hereby waive presentment, protest, notice of protest and dishonor.  The Borrower expressly consents to any extension or renewal, in whole or in part, and all delays in time of payment or other performance which the Lender may grant at any time and from time to time without limitation and without any notice or further consent of the undersigned.

ACTIVE:22451590.4

The remedies of the Lender as provided herein or in the other Loan Documents shall be cumulative and concurrent and may be pursued singularly, successively or together, at the sole discretion of the Lender, and may be exercised as often as the occasion therefor shall arise.

The Lender may, in the sole discretion of the Lender, accept payments made by the Borrower after any default has occurred, without waiving any of the Lender's rights herein.

**L.** **Loan Charges**:  Nothing herein contained, nor any transaction related thereto, shall be construed or so operate as to require Borrower or any person liable for the repayment of same, to pay interest in an amount or at a rate greater than the maximum allowed by applicable law.  Should any interest or other charges paid by the Borrower, or any parties liable for the payment of the loan made pursuant to this Note, result in the computation or earning of interest in excess of the maximum legal rate of interest permitted under the law in effect while said interest is being earned, then any and all of such excess shall be and is waived by the Lender, and all such excess shall be automatically credited against and in reduction of the principal balance, and any portion of the excess that exceeds the principal balance shall be paid by the Lender to the Borrower or any parties liable for the payment of the loan made pursuant to this Note so that under no circumstances shall the Borrower, or any parties liable for the payment of the loan hereunder, be required to pay interest in excess of the maximum rate allowed by applicable law.

**M.** **Jurisdiction**:  The laws of the state of Delaware shall govern the interpretation and enforcement of this Note.  In the event that legal action is instituted to collect any amounts due under, or to enforce any provision of, this instrument, the Borrower and any endorser, guarantor or other person primarily or secondarily liable for payment hereof consent to, and by execution hereof submit themselves to the jurisdiction of the federal or state courts in the state of New York, and, notwithstanding the place of residence of any of them or the place of execution of this instrument, such litigation may be brought in or transferred to a court of competent jurisdiction in the state of New York.

**N.** **Assignment**:  Any transfer and assignment of this Note must be effectuated in accordance with the terms and conditions of Section P below.

**O.** **Non-Waiver**:  The failure at any time of the Lender to exercise any of its options or any other rights hereunder shall not constitute a waiver thereof, nor shall it be a bar to the exercise of any of its options or rights at a later date.  All rights and remedies of the Lender shall be cumulative and may be pursued singly, successively or together, at the option of the Lender.

**P.** **Miscellaneous**:

1.       TIME IS OF THE ESSENCE OF THIS NOTE.

2.       It is agreed that the granting to the Borrower or any other party of an extension or extensions of time for the payment of any sum or sums due under this Note or under the Security Agreement or for the performance of any covenant or stipulation thereof or the taking of other or additional security shall not in any way release or affect the liability of the Borrower under this Note or any of the Loan Documents.

10

Case 1:25-cv-07928    Document 1-1    Filed 09/24/25    Page 19 of 79

3.      This Note may not be changed orally, but only by an agreement in writing, signed by the party against whom enforcement of any waiver, change, modification, or discharge is sought.

4.      All parties to this Note, whether the Borrower, principal, surety, guarantor or endorser, hereby waive presentment for payment, demand, notice, protest, notice of protest, and notice of dishonor.

5.      The Borrower acknowledges that the Lender shall have no obligation whatsoever to renew, modify or extend this Note or to refinance the indebtedness under this Note upon the maturity thereof, except as specifically provided herein.

6.      The Borrower shall pay on demand all reasonable and documented out-of-pocket costs and expenses, including reasonable and documented out-of-pocket attorneys' fees incurred by the Lender in connection with this Note, the other Loan Documents and any other document or agreement related hereto or thereto, and the transactions contemplated hereby, including all such reasonable out-of-pocket costs, expenses and fees incurred in connection with the negotiation, preparation, execution, amendment, administration, performance, collection, and enforcement of this Note and subject to any limitations set forth herein or in any other Loan Document, and all such documents and agreements and the creation, perfection, protection, satisfaction, foreclosure or enforcement of the security interest created pursuant to the Security Agreement. Such payment may be set-off against the Loan amount.

7.      The Lender shall have the right to accept and apply to the outstanding balance of this Note any and all payments or partial payments received from the Borrower after the due date therefor, whether this Note has been accelerated or not, without waiver of any of the Lender's rights to continue to enforce the terms of this Note and to seek any and all remedies provided for herein or in any instrument securing the same, including, but not limited to, the right to foreclose on such security.

8.      All amounts received by the Lender shall be applied to expenses, late fees and interest before principal or in any other order as determined by the Lender, in its sole discretion, as permitted by law.

9.      Neither party shall have the right to publicize the other party's involvement in the Loan without such other party's prior written approval, except as required pursuant to applicable law.

10.     The Borrower may not assign, delegate, or transfer any of its rights or obligations hereunder without the prior written consent of the Lender. The Lender may freely assign, delegate, and transfer its rights and obligations hereunder, in whole or in part, without the Borrower's consent. Any purported assignment, delegation, or transfer in violation of this Section P(10) shall be null and void.

11.     If any clause or provision herein contained operates or would prospectively operate to invalidate this Note in part, then the invalid part of said clause or provision only shall be held for naught, as though not contained herein, and the remainder of this Note shall remain operative and in full force and effect.

12.     Any notice shall be provided as set forth in the Security Agreement.

13.     Electronic or facsimile signatures shall have the same legal effect as originals.

ACTIVE:22451590.4

Case 1:25-cv-07928    Document 1-1    Filed 09/24/25    Page 20 of 79

**Q.** <u>**Waiver of Jury Trial**</u>: THE BORROWER AND THE LENDER HEREBY KNOWINGLY, VOLUNTARILY AND INTENTIONALLY WAIVE TO THE FULLEST EXTENT PERMITTED BY APPLICABLE LAW THE RIGHT EITHER MAY HAVE TO A TRIAL BY JURY IN RESPECT OF ANY LITIGATION DIRECTLY OR INDIRECTLY BASED ON OR RELATING TO OR ARISING OUT OF, UNDER OR IN CONNECTION WITH THIS NOTE AND ANY AGREEMENT CONTEMPLATED TO BE EXECUTED IN CONJUNCTION HEREWITH AND THE TRANSACTIONS CONTEMPLATED HEREBY OR THEREBY, OR ANY COURSE OF CONDUCT, COURSE OF DEALING, STATEMENTS (WHETHER VERBAL OR WRITTEN) OR ACTIONS OF EITHER PARTY HERETO. THIS PROVISION IS A MATERIAL INDUCEMENT FOR THE LENDER TO EXTEND TO THE BORROWER THE LOAN EVIDENCED BY THIS NOTE.

*[Signature Page Follows]*

12

ACTIVE:22451590.4

The Borrower has duly executed this Note effective as of the date set forth hereinabove, and the Borrower and the Lender otherwise set their hands hereto intending to be bound by the mutual covenants, terms and conditions contained in this Note.

**BORROWER**:

**VALIDUS BROKER DEALER INVESTMENT MANAGEMENT COMPANY, LLC,**
a Florida limited liability company

By: _____
Name:    Mario Garza, Jr.
Title:    Manager

[Signature Page to the Secured Promissory Note]

**LENDER**:

**I.B.I VOLCANO INVESTMENTS LLC**,
a Delaware limited liability company

By: _____

Name:   Ziv Sapir

Title:     Chief Executive Officer

[Signature Page to the Secured Promissory Note]

## SECURITY AND PLEDGE AGREEMENT

THIS SECURITY AND PLEDGE AGREEMENT (this "*Agreement*"), dated as of June 12, 2024, is made by Validus Broker Dealer Investment Management Company, LLC, a Florida limited liability company (the "*Grantor*"), whose address is 3504 Cragmont Dr., Ste 100, Tampa, FL 33619, to I.B.I Volcano Investments LLC, a Delaware limited liability company ("*Secured Party*"), whose address is Shalom Tower, 18th Floor, 9 Ahad Ha'am Street, 65251, Tel Aviv, Israel.

### RECITALS

A.  Grantor has executed and delivered a Secured Promissory Note dated as of even date herewith (the "*Note*") to Secured Party evidencing a loan from Secured Party to Grantor in the original principal amount of TWO MILLION THREE HUNDRED AND FIFTY THOUSAND AND 00/100 DOLLARS ($2,350,000.00) (the "*Loan*").

B.  The Guarantors have agreed to guarantee all obligations owing from Grantor to Secured Party in connection with the Note pursuant to the Guaranty.

C.  The parties have agreed to secure repayment of the Loan and other obligations defined herein and in the Note with this Agreement.

NOW, THEREFORE, in consideration of the premises Grantor hereby agrees as follows:

### AGREEMENT

1.  **Definitions**.

    1.1    Capitalized terms used but not defined herein shall have the meanings given such terms in the Note. Unless otherwise defined herein, terms used herein that are defined in the UCC shall have the meanings assigned to them in the UCC. However, if a term is defined in Article 9 of the UCC differently than in another Article of the UCC, the term has the meaning specified in Article 9.

    1.2    For purposes of this Agreement, the following terms shall have the following meanings:

        (a)    "*Agreement*" has the meaning set forth in the preamble.

        (b)    [reserved].

        (c)    "*Distributions*" means any distribution or other transfer of cash or property, in respect of the Pledged Equity, by the Issuer to Grantor, however characterized.  For the avoidance of doubt, "Distributions" include so-called "tax neutral distributions" (*i.e.*, amounts distributed to Grantor in respect of its estimated federal, state, and local tax liability calculated on the basis of its actual or anticipated allocation of the profits of the Issuer).

        (d)    "*Event of Default*" has the meaning set forth in Section 11.1.

        (e)    "*Grantor*" has the meaning set forth in the preamble.

        (f)    "*Guarantors*" means, collectively, Mario Garcia, Mark Levey and Robert Winslow.

        (g)    "*Guaranty*" has the meaning set forth in Recital B.

        (h)    "*Issuer*" means SCHMID Group N.V.

(i)     "**Lien**" means, with respect to any asset, any mortgage, leasehold mortgage, lien, pledge, charge, security interest, hypothecation, or encumbrance of any kind in respect of such asset, including any rights or options to or for any of the foregoing.  For the purposes of this Agreement, a Person shall be deemed to own subject to a Lien any asset which it has acquired or holds subject to the interest of a vendor or lessor under any conditional sale agreement, capital lease, or other title retention agreement relating to such asset.

(j)     "**Loan**" has the meaning set forth in <u>Recital A</u>.

(k)     "**Loan Documents**" means this Agreement, the Note, the Guaranty, and every other document and instrument executed in connection with the Loan.

(l)     "**Note**" has the meaning set forth in <u>Recital A</u>.

(m)     "**Operating Agreement**" means the Issuer's operating agreement, limited liability company agreement, or similar governing agreement.

(n)     "**Permitted Liens**" means: (i) statutory Liens of landlords, carriers, warehousemen, processors, mechanics, materialmen or suppliers incurred in the ordinary course of business and securing amounts not yet due or declared to be due by the claimant thereunder or amounts which are being contested in good faith and by appropriate proceedings and for which Grantor has maintained adequate reserves; (ii) Liens in favor of Secured Party; (iii) zoning restrictions and easements, licenses, covenants and other restrictions affecting the use of real property that do not individually or in the aggregate have a material adverse effect; (iv) Liens in connection with purchase money indebtedness with respect to Equipment and capitalized leases otherwise permitted pursuant to this Agreement, *provided*, that such liens attach only to the assets the purchase of which was financed by such purchase money indebtedness or which is the subject of such capitalized leases; (v) Liens for taxes, assessments and other government charges or levies not yet due and payable or which are being contested in good faith and by appropriate proceedings and for which Grantor has maintained adequate reserves; (vi) Liens consisting of deposits or pledges made in the ordinary course of business in connection with workers' compensation, unemployment, social security and similar laws, or to secure the performance of statutory obligations, bids, leases, government contracts, trade contracts, and other similar obligations (exclusive of obligations for the payment of borrowed money); (vii) licenses (with respect to intellectual property and other property), leases, and subleases granted to third parties and not interfering in any material respect with ordinary conduct of business of Grantor; (viii) Liens in favor of customs and revenue authorities arising as a matter of law to secure payment of customs duties in connection with the importation of goods; (ix) Liens of collecting banks under the UCC on items in the course of collection, statutory liens, and rights of set-off of banks; (x) Liens arising from filing UCC financing statements relating solely to leases not prohibited by this Agreement; and (xi) Liens that Secured Party has expressly permitted in writing.

(o)     "**Pledged Equity**" means the limited liability company, membership, or other interests, no matter how characterized, described on **<u>Schedule 1</u>** and issued by the Issuer and any additional interests issued by Issuer to Grantor, and the certificates, instruments and agreements representing such interests and includes any securities or other interests, howsoever evidenced or denominated, received by Grantor in exchange for, or as a distribution on, or otherwise received in respect of, such interests.

(p)     "**Pledged Collateral**" has the meaning set forth in <u>Section 2.2</u>.

(q)     "**Proceeds**" means "proceeds" as such term is defined in section 9-102 of the UCC and, in any event, shall include all dividends or other income from the Collateral or Pledged Collateral, collections thereon or distributions with respect thereto.

(r)     "**Secured Obligations**" has the meaning set forth in <u>Section 3.2</u>.

ACTIVE:22451616.4

(s)     "**Secured Party**" has the meaning set forth in the preamble.

(t)     "**Securities Act**" has the meaning set forth in Section 11.5.

(u)     "**UCC**" means the Uniform Commercial Code as in effect from time to time in the State of Delaware or, when the laws of any other state govern the method or manner of the perfection or enforcement of any security interest in any of the Collateral, the Uniform Commercial Code as in effect from time to time in such state.

2.      **Grant of Security**.

2.1     Reserved.

2.2     As collateral security for the full, prompt, complete and final payment and performance when due (whether at stated maturity, by acceleration, or otherwise) of all the Secured Obligations under the Note, Grantor hereby assigns and pledges to Secured Party, a continuing, perfected first security interest in all of Grantor's right, title, and interest in and to the following, wherever located, whether now existing or hereafter arising or acquired (the "**Pledged Collateral**"):

(a)     the Pledged Equity, including all rights to receive distributions of cash and other property on account of the Pledged Equity;

(b)     any rights related to Grantor's capital account within the Issuer in respect of the Pledged Equity;

(c)     [reserved];

(d)     all rights, privileges, authority, and power arising from Grantor's ownership of the Pledged Equity or its membership in the Issuer, including rights to participate in the management, voting, and governance of the Issuer;

(e)     all Distributions and rights of Grantor to demand or receive Distributions;

(f)     all rights of Grantor and its affiliates under the Warranty Agreement; and

(g)     all Proceeds and products of the foregoing, all books and records relating to the foregoing, all supporting obligations related thereto, and all accessions to, substitutions, and replacements for, and profits and products of, each of the foregoing, and any and all Proceeds of any insurance, indemnity, warranty, or guaranty payable to Grantor from time to time with respect to any of the foregoing.

3.      **Security for Obligations**. The Pledged Collateral secure the payment and performance of:

3.1     the obligations of Grantor from time to time arising under the Note (as same may be extended, modified, renewed, or consolidated) and the other Loan Documents or otherwise with respect to the due and punctual payment of (a) the principal of and premium, if any, and interest on the Loan (including interest accruing during the pendency of any bankruptcy, insolvency, receivership, or other similar proceeding, regardless of whether allowed or allowable in such proceeding), when and as due, whether at maturity, by acceleration, upon one or more dates set for prepayment, or otherwise and (b) all other monetary obligations, including fees, costs, attorneys' fees and disbursements, reimbursement obligations, expenses, and indemnities, whether primary, secondary, direct, contingent, fixed, or otherwise (including monetary obligations incurred during the pendency of any bankruptcy, insolvency, receivership, or other similar proceeding, regardless of whether allowed or allowable in such proceeding), of Grantor under the Loan Documents; and

ACTIVE:22451616.4

3.2    all other agreements, duties, indebtedness, obligations, and liabilities of any kind of Grantor under, out of, or in connection with the Loan Documents or any other document made, delivered, or given in connection with any of the foregoing, in each case whether now existing or hereafter arising, whether evidenced by a note or other writing, whether allowed in any bankruptcy, insolvency, receivership, or other similar proceeding, whether arising from an extension of credit, issuance of a letter of credit, acceptance, loan, guaranty, indemnification, or otherwise, and whether direct or indirect, absolute or contingent, due or to become due, primary or secondary, or joint or several (all such obligations, liabilities, sums, and expenses set forth in this <u>Section 3</u> being herein collectively called the "***Secured Obligations***").

4.    **Representations and Warranties**.

4.1    <u>Representations and Warranties of Grantor</u>. Grantor represents and warrants that:

(a)    The Pledged Collateral consisting of securities have been duly authorized and validly issued and are fully paid and non-assessable and subject to no options to purchase or similar rights. None of the account debtors or other persons obligated on any of the Collateral is a governmental authority covered by the Federal Assignment of Claims Act or like federal, state, or local statute or rule in respect of such Collateral. Grantor has at all times operated its business in compliance with all applicable provisions of the federal Fair Labor Standards Act, as amended, and with all applicable provisions of federal, state, and local statutes and ordinances dealing with the control, shipment, storage, or disposal of hazardous materials or substances;

(b)    Other than any security interest that may exist in favor of Secured Party, this Agreement and the pledge of the Pledged Collateral pursuant to this Agreement creates a valid and perfected security interest in the Pledged Collateral, securing the payment of the Secured Obligations, and all filings and any other actions necessary or desirable to perfect and protect such security interest have been or will be duly taken;

(c)    Grantor has full power, authority, and legal right to pledge the Pledged Collateral pursuant to this Agreement;

(d)    This Agreement has been duly authorized, executed, and delivered by Grantor and constitutes a legal, valid, and binding obligation of Grantor enforceable in accordance with its terms, subject to applicable bankruptcy, insolvency, reorganization, moratorium, or other similar laws affecting creditors' rights generally and subject to equitable principles (regardless of whether enforcement is sought in equity or at law), and the party executing this Agreement on behalf of Grantor has received all necessary corporate authority and is duly authorized on behalf of Grantor to deliver this Agreement;

(e)    The execution and delivery of this Agreement by Grantor, and the performance by Grantor of its obligations hereunder, will not violate any provision of any applicable law or regulation or any order, judgment, writ, award, or decree of any court, arbitrator, or governmental authority, domestic or foreign, applicable to Grantor or any of its property, or the organizational or governing documents of Grantor or any agreement or instrument to which Grantor is party or by which it or its property is bound;

(f)    No authorization, approval, or other action by, and no notice to or filing with, any governmental authority or regulatory body is required for the borrowing of the Loan and the pledge by Grantor of the Collateral pursuant to this Agreement or for the execution and delivery of this Agreement by Grantor or the performance by Grantor of its obligations hereunder;

(g)    Grantor has taken all action required on its part for control (as defined in sections 8-106, 9-104, 9-105, 9-106 and 9-107 of the UCC, section 201 of the federal Electronic Signatures in Global and National Commerce Act and, as the case may be, section 16 of the Uniform Electronic Transactions Act, as

4

applicable) to have been obtained by Secured Party over all Collateral with respect to which such control may be obtained pursuant to the UCC. No person other than Grantor or Secured Party has control or possession of all or any part of the Collateral; and

(h)     Grantor's exact legal name is Validus Broker Dealer Investment Management Company, LLC, (ii) Grantor is a duly organized and validly existing limited liability company in good standing, and is duly and validly doing business in those jurisdictions in which it does business, and (iii) Grantor's federal employment identification number is 61-1804690, Grantor's place of business (or, if more than one, its chief executive office) is 3504 Cragmont Dr., Ste 100, Tampa, FL 33619.

(i)     The Pledged Equity has been duly authorized and validly issued and is fully paid and non-assessable and subject to no options to purchase or similar rights, and all information set forth in **Schedule 1** relating to the Pledged Equity is accurate and complete;

(j)     At the time the Pledged Collateral becomes subject to the lien and security interest created by this Agreement, Grantor will be the sole, direct, legal and beneficial owner of its interest in the Pledged Collateral as set forth on **Schedule 1**, free and clear of any Lien except for the security interest created by this Agreement;

(k)     The pledge of the Pledged Collateral pursuant to this Agreement creates a valid and perfected security interest in the Pledged Collateral, securing the payment and performance when due of the Secured Obligations;

(l)     Grantor has full power, authority, and legal right to pledge the Pledged Collateral pursuant to this Agreement;

(m)     Upon the transfer of the Pledged Collateral, or any portion thereof, pursuant to Section 12, the Issuer will continue in existence;

(n)     The Pledged Equity is not subject to any restrictions on transfer or lockup period; and

(o)     The Issuer has not elected to treat the Pledged Equity as Investment Property under Article 8 of the UCC, and none of the Pledged Equity is credited to a securities account.

5.     **Perfection of Security Interest and Pledge; Further Assurances**.

5.1     Grantor shall, from time to time, as may be required by Secured Party with respect to all Collateral, promptly take all actions as may be reasonably requested by Secured Party to perfect the Lien of Secured Party in the Collateral, including, with respect to all Pledged Collateral over which control may be obtained within the meaning of sections 8-106, 9-104, 9-105, 9-106 and 9-107 of the UCC, section 201 of the federal Electronic Signatures in Global and National Commerce Act and, as the case may be, section 16 of the Uniform Electronic Transactions Act, as applicable, Grantor shall promptly take all actions as may be reasonably requested from time to time by Secured Party so that control of such Pledged Collateral is obtained and at all times held by Secured Party. All of the foregoing shall be at Grantor's sole cost and expense.

5.2     Grantor hereby irrevocably authorize Secured Party at any time and from time to time to file in any relevant jurisdiction any financing statements, fixture filings, and any amendments thereto that contain the information required by Article 9 of the UCC of each applicable jurisdiction for the filing of any financing statement or amendment relating to the Pledged Collateral, including any financing or continuation statements or other documents for the purpose of perfecting, confirming, continuing, enforcing or protecting the Lien granted by Grantor hereunder, without Grantor's signature where permitted by law. Grantor agrees to provide all information required by Secured Party pursuant to this Section 5.2 promptly to Secured Party upon request.

5

5.3     If Grantor shall at any time hold or acquire any certificated securities, promissory notes, tangible chattel paper, negotiable documents, or warehouse receipts relating to the Pledged Collateral, Grantor shall promptly indorse, assign, and deliver the same to Secured Party, accompanied by such instruments of transfer or assignment duly executed in blank as Secured Party may from time to time specify.

5.4     Reserved.

5.5     If any Pledged Collateral is at any time in the possession of a bailee, Grantor shall promptly notify Secured Party thereof and, at Secured Party's request and option, shall promptly obtain an acknowledgment from the bailee, in form and substance satisfactory to Secured Party, that the bailee holds such Collateral for the benefit of Secured Party and the bailee agrees to comply, without Grantor's further consent, at any time with instructions of Secured Party as to such Pledged Collateral.

5.6     Reserved.

5.7     Grantor agrees it will promptly execute and deliver all further instruments and documents, and take all further action, that may be necessary or desirable, or that Secured Party may reasonably request, in order to perfect and protect any security interest granted by this Agreement.

5.8     Grantor shall, from time to time, as may be reasonably requested by Secured Party with respect to all Pledged Collateral, promptly take all actions as may be reasonably requested by Secured Party to perfect the security interest of Secured Party in Pledged Collateral, including with respect to all Pledged Collateral over which "control" (within the meaning of Section 8-106 of the UCC) may be obtained, Grantor will promptly take all actions as may be reasonably requested from time to time by Secured Party so that "control" (within the meaning of Section 8-106 of the UCC) of such Pledged Collateral is obtained and at all times held by Secured Party. All of the foregoing shall be at the sole cost and expense of Grantor.

5.9     Grantor hereby irrevocably authorizes Secured Party at any time and from time to time to file in any relevant jurisdiction any financing statements and amendments thereto that contain the information required by Article 9 of the UCC of each applicable jurisdiction for the filing of any financing statement or amendment relating to Pledged Collateral, without the signature of Grantor or Grantor where permitted by law. Grantor agrees to provide all information reasonably requested by Secured Party pursuant to this Section 5.9 promptly to Secured Party upon request.

5.10    Grantor will not permit the Operating Agreement to provide that the Pledged Equity are securities governed by Article 8 of the UCC as in effect in any relevant jurisdiction without prior written notice to Secured Party.  In the event the Operating Agreement provides the Pledged Equity are securities governed by Article 8 of the UCC as in effect in any relevant jurisdiction, Grantor will promptly take all actions as may be required for Secured Party to have "control" (within the meaning of Section 8-106 of the UCC) of the affected Pledged Collateral.

6.     **Voting and Distributions**.

6.1     Secured Party agrees that unless an Event of Default shall have occurred and be continuing, Grantor may, to the extent Grantor has such right as a holder of the Pledged Equity and any other Pledged Collateral consisting of securities, other equity interests or indebtedness owed by any obligor, vote and give consents, ratifications, and waivers with respect thereto, except to the extent that, in Secured Party's reasonable judgment, any such vote, consent, ratification, or waiver would detract from the value thereof as Pledged Collateral or which would be inconsistent with or result in any violation of any provision of this Agreement or any other Loan Document, and from time to time, upon request from Grantor, Secured Party shall deliver to Grantor suitable proxies so that Grantor may cast such votes, consents, ratifications, and waivers.

ACTIVE:22451616.4

Case 1:25-cv-07928    Document 1-1    Filed 09/24/25    Page 29 of 79

6.2     Secured Party agrees that Grantor may, unless an Event of Default shall have occurred and be continuing, receive and retain all dividends and other distributions with respect to the Pledged Equity and any other Pledged Collateral consisting of securities, other equity interests, or indebtedness owed by any obligor.

6.3     In case any distribution is paid to Grantor in violation of the provisions of the Loan Documents, such amounts will be deemed held by Grantor as trustee for Secured Party and will be promptly paid over to Secured Party.

7.     **Covenants**.

7.1     <u>Covenants of Grantor</u>.

(a)     Grantor will not, without providing at least 30 days' prior written notice to Secured Party, change its legal name, identity, type of organization, jurisdiction of organization, corporate structure, location of its chief executive office or principal place of business, or its organizational identification number. Grantor will, prior to any change described in the preceding sentence, take all actions reasonably requested by Secured Party to maintain the perfection and priority of Secured Party's Lien in the Collateral and Pledged Collateral.

(b)     Reserved.

(c)     Grantor will, at its own cost and expense, defend title to the Pledged Collateral and the Lien of Secured Party therein against the claim of any person or entity claiming against or through Grantor and shall maintain and preserve such perfected Lien for so long as this Agreement shall remain in effect.

(d)     Grantor will not grant, create, permit, or suffer to exist any Lien or other restriction or limitation of any nature whatsoever on, any of the Pledged Collateral or any interest therein except for Permitted Liens.

(e)     Grantor will not sell, lease, or otherwise dispose of all or any substantial portion of the Pledged Collateral except for in the ordinary course of business.

(f)     Grantor will keep the Pledged Collateral in good order and repair and will not use the same in violation of law or any policy of insurance thereon. Grantor will permit Secured Party, or its designee, to inspect the Collateral at any reasonable time, wherever located.

(g)     Grantor will pay promptly when due all taxes, assessments, governmental charges, and levies upon the Collateral or incurred in connection with the use or operation of the Pledged Collateral or incurred in connection with this Agreement.

(h)     Grantor will continue to operate its business in compliance with all applicable provisions of the federal Fair Labor Standards Act, as amended, and with all applicable provisions of federal, state, and local statutes and ordinances dealing with the control, shipment, storage, or disposal of hazardous materials or substances.

(i)     Grantor agrees that it will not sell, offer to sell, dispose of, convey, assign, or otherwise transfer, grant any option with respect to, restrict, or grant, create, permit, or suffer to exist any Lien or other restriction or limitation of any nature whatsoever on, any of Pledged Collateral or any interest therein except as expressly provided for herein or with the prior written consent of Secured Party.

(j)     Grantor will not, without providing at least 30 days' prior written notice to Secured Party, change its legal name, identity, type of organization, jurisdiction of organization, corporate structure, location of its chief executive office or principal place of business, or its organizational identification number.

Grantor will, prior to any change described in the preceding sentence, take all actions reasonably requested by Secured Party to maintain the perfection and priority of Secured Party's security interest in Pledged Collateral.

(k)    Grantor will not (i) suffer or permit any amendment or modification of the Operating Agreement without Secured Party's prior written consent or (ii) waive, release, or compromise any rights or claims Grantor may have against any other party which arise under the Operating Agreement.

(l)    Grantor will not consent to or cause the issuance or grant by the Issuer of any other right or interest in respect of, in addition to, or in substitution for, Pledged Collateral constituting Pledged Equity, except to Grantor, nor shall Grantor consent to, or cause, any division, merger, consolidation, share exchange, reorganization, or other business combination involving the Issuer or to which the Issuer is a party.

(m)    Without the Secured Party's prior written consent, the Grantor shall not (i) directly or indirectly transfer, sell, assign, pledge, convey, lend, hypothecate or otherwise encumber or dispose of the Pledged Equity, or (ii) directly or indirectly enter into any forward sale, hedging or similar transaction (including any transaction by which any of the Secured Party's economic risks and/or rewards or ownership of, or voting rights are transferred or adversely affected) involving the Pledged Equity;

(n)    Grantor will not consent to or cause an election by the Issuer or otherwise facilitate any action that would result in the classification of the Pledged Equity as "investment property" under the UCC.

(o)    Grantor will take any and all actions necessary to cause the sale of the Pledged Collateral if directed to do so by Secured Party upon and during the continuance of an Event of Default.

(p)    Grantor will not convey, assign, transfer, pledge, hypothecate, encumber or otherwise dispose of the Pledged Collateral or any equity in the Grantor or any interest therein or permit the conveyance, assignment or transfer of any interest in the Issuer or any member of the Grantor.

8.    **Secured Party Appointed Attorney-in-Fact**. Grantor hereby appoints Secured Party as its attorney-in-fact, with full authority in the place and stead of Grantor, and in the name of Grantor, or otherwise, from time to time during the continuance of an Event of Default in Secured Party's discretion to take any action and to execute any instrument which Secured Party may deem necessary or advisable to accomplish the purposes of this Agreement (but Secured Party shall not be obligated to and shall have no liability to Grantor or any third party for failure to do so or to take action). This appointment, being coupled with an interest, shall be irrevocable. Grantor hereby ratifies all that said attorneys shall lawfully do or cause to be done by virtue hereof.

9.    **Secured Party May Perform**. If Grantor fails to perform any obligation contained in this Agreement, Secured Party may itself perform, or cause performance of, such obligation, and the expenses of Secured Party incurred in connection therewith shall be payable by Grantor; *provided that* Secured Party shall not be required to perform or discharge any obligation of Grantor.

10.    **Secured Party's Duties**. The powers conferred on Secured Party hereunder are solely to protect its interest in the Pledged Collateral and shall not impose any duty upon it to exercise any such powers. Except for the safe custody of any Pledged Collateral in its possession and the accounting for moneys actually received by it hereunder, Secured Party shall have no duty as to any Pledged Collateral or as to the taking of any necessary steps to preserve rights against prior parties or any other rights pertaining to any Pledged Collateral or to enable Secured Party to exercise and enforce its rights and remedies hereunder or under any other agreement with respect to any Pledged Collateral.

11.    **Default; Remedies**.

ACTIVE:22451616.4

11.1     Each Event of Default (as such term is defined in the Note) under the Note is hereby incorporated herein and any such Event of Default shall constitute an "*Event of Default*" hereunder.  Following an Event of Default and while it is continuing, Secured Party may exercise in respect of the the Pledged Collateral, in addition to other rights and remedies provided for herein or otherwise available to it, all the rights and remedies of a secured party on default under the UCC (whether or not the UCC applies to the affected Pledged Collateral) or other applicable law, including the right to take possession of, hold, collect, sell, lease, deliver, grant options to purchase, or otherwise retain, liquidate, or dispose of all or any portion of the Pledged Collateral, and also may: (a) require Grantor to, and Grantor hereby agrees that it will, assemble all or part of the Pledged Collateral, as applicable, as directed by Secured Party and make it available to Secured Party at a place to be designated by Secured Party which is reasonably convenient to both parties; and (b) without notice except as specified below or as may be required by law, sell the Pledged Collateral or any part thereof at public or private sale, at any of Secured Party's offices or elsewhere, for cash, on credit of for future delivery, and upon such other terms as Secured Party may deem commercially reasonable. Grantor agrees that to the extent notice of sale shall be required by law, at least 10 days' written notice to Grantor of the time and place of any public sale or the time after which any private sale is to be made shall constitute reasonable notification. Secured Party shall not be obligated to make any sale of Pledged Collateral regardless of notice of sale having been given. Secured Party may adjourn any public or private sale from time to time by announcement at the time and place fixed therefor, and such sale may, without further notice, be made at the time and place to which it was so adjourned. So long as the sale of the Pledged Collateral is made in a commercially reasonable manner, Secured Party may sell such Pledged Collateral on such terms and to such purchaser(s) as Secured Party in its absolute discretion may choose, without assuming any credit risk and without any obligation to advertise or give notice of any kind other than that necessary under applicable law. Without precluding any other methods of sale, the sale of the Pledged Collateral or any portion thereof shall have been made in a commercially reasonable manner if conducted in conformity with reasonable commercial practices of creditors disposing of similar property. At any sale of the Pledged Collateral, if permitted by applicable law, Secured Party may be the purchaser, licensee, assignee, or recipient of the Pledged Collateral or any part thereof, and shall be entitled, for the purpose of bidding and making settlement or payment of the purchase price for all or any portion of the Pledged Collateral sold, assigned, or licensed at such sale, to use and apply any of the Secured Obligations as a credit on account of the purchase price of the Pledged Collateral or any part thereof payable at such sale. To the extent permitted by applicable law, Grantor waives all claims, damages, and demands it may acquire against Secured Party arising out of the exercise by it of any rights hereunder. Grantor hereby waives and releases to the fullest extent permitted by law any right or equity of redemption with respect to the Pledged Collateral, as applicable, whether before or after sale hereunder, and all rights, if any, of marshalling the Pledged Collateral, as applicable, and any other security for the Secured Obligations or otherwise. At any such sale, unless prohibited by applicable law, Secured Party or any custodian may bid for and purchase all or any part of the Pledged Collateral so sold free from any such right or equity of redemption. Neither Secured Party nor any custodian shall be liable for failure to collect or realize upon any or all of the Pledged Collateral or for any delay in so doing, nor shall it be under any obligation to take any action whatsoever with regard thereto.

11.2     All rights of Grantor to (a) exercise the voting and other consensual rights it would otherwise be entitled to exercise pursuant to Section 6.1 and (b) receive the dividends and other distributions which it would otherwise be entitled to receive and retain pursuant to Section 6.2, shall immediately cease upon an Event of Default, and all such rights shall thereupon become vested in Secured Party, which shall have the sole right to exercise such voting and other consensual rights and receive and hold such dividends and other distributions as Pledged Collateral.

11.3     Any cash held by Secured Party as Pledged Collateral and all cash Proceeds received by Secured Party in respect of any sale of, collection from, or other realization upon all or any part of the Pledged Collateral shall be applied in whole or in part by Secured Party to the payment of expenses incurred by Secured Party in connection with the foregoing, including reasonable attorneys' fees, and the balance of such proceeds shall be applied or set off against all or any part of the Secured Obligations in such order as Secured Party shall elect. Any surplus of such cash or cash Proceeds held by Secured Party and remaining after payment in full of

9

all the Secured Obligations shall be paid over to Grantor, or to whomsoever may be lawfully entitled to receive such surplus. Grantor shall remain liable for any deficiency if such cash and the cash Proceeds of any sale or other realization of the Pledged Collateral are insufficient to pay the Secured Obligations and the fees and other charges of any attorneys employed by Secured Party to collect such deficiency.

11.4    If Secured Party shall determine to exercise its rights to sell all or any of the Pledged Collateral pursuant to this <u>Section 11</u>, Grantor agrees that, upon request of Secured Party, it will, at its own expense, do or cause to be done all such acts and things as may be necessary to make such sale of the Pledged Collateral, as applicable, or any part thereof, valid and binding and in compliance with applicable law.

11.5    Grantor agrees that compliance with the Securities Act of 1933 as now in effect or as hereafter amended, or any similar statute hereafter adopted with similar purpose or effect (the "***Securities Act***"), as well as any applicable "Blue Sky" or other state securities laws, if applicable to Pledged Collateral or the portion thereof being sold, may require strict limitations as to the manner in which Secured Party or any subsequent transferee may dispose of the Pledged Collateral. With respect to any disposition as to which the Securities Act or analogous state securities laws are applicable, Grantor hereby waives any objection to sale in a compliant manner and agrees that Secured Party has no obligation to obtain the maximum possible price for the Pledged Collateral so long as Secured Party proceeds in a commercially reasonable manner. Without limiting the generality of the foregoing, Grantor agrees that, in conducting a disposition of Pledged Collateral as to which the Securities Act or analogous state securities laws apply, Secured Party may seek to sell the Pledged Collateral by private placement, and may restrict bidders and prospective purchasers to those who are willing to represent that they are purchasing for investment only and not for distribution and who otherwise satisfy qualifications designed to ensure compliance with the Securities Act and analogous state securities laws and those that may be established in the Operating Agreement. Grantor acknowledges that, in order to protect Secured Party's interest, it may be necessary to sell the Pledged Collateral at a price less than the maximum price attainable if a sale were delayed or were made in another manner, including, without limitation, a public offering under the Securities Act. In order to address these potential compliance requirements, Secured Party may solicit offers to purchase the Pledged Collateral from a limited number of bidders reasonably believed by Secured Party to be institutional investors or accredited investors. If Secured Party solicits offers in a commercially reasonable manner, then acceptance by Secured Party of one or more of the offers shall be deemed to be a commercially reasonable method of disposition of the Pledged Collateral, and Secured Party will not be responsible or liable for selling all or any portion of the Pledged Collateral at a price that Secured Party deems in good faith to be reasonable. Secured Party is under no obligation to delay a disposition of any portion of the Pledged Collateral that are securities under the Securities Act or applicable "Blue Sky" or other state securities law for the period of time necessary to permit any of Grantor or the Issuer to register the securities for public sale under the Securities Act or under applicable "Blue Sky" or other state securities laws, even if Grantor or the Issuer agrees to do so. In addition, to the extent not prohibited by applicable law, Grantor waives any right to prior notification (except to the extent expressly provided in this Agreement) or judicial hearing in connection with the taking possession or the disposition of any of the Pledged Collateral, including any right which Grantor otherwise would have. If any notification of a proposed sale or other disposition of any part of the Pledged Collateral is required under applicable law, Pledged agrees that 10 calendar days' prior notification of the time and place of any public sale and of the time after which any private sale or other disposition is to be made is commercially reasonable.

12.    **Standards for Exercising Remedies**. To the extent that applicable law imposes duties on Secured Party to exercise remedies in a commercially reasonable manner, Grantor acknowledges and agrees that it is not commercially unreasonable for Secured Party: (a) to fail to incur expenses reasonably deemed significant by Secured Party to prepare the Pledged Collateral for disposition or otherwise to fail to complete raw material or work in process into finished goods or other finished products for disposition; (b) to fail to obtain third party consents for access to the Pledged Collateral to be disposed of, or to obtain or, if not required by other law, to fail to obtain governmental or third party consents for the collection or disposition of the Pledged Collateral to be collected or disposed of; (c) to fail to exercise collection remedies against account debtors or other persons obligated on the Pledged Collateral or to fail to remove liens or encumbrances on or any adverse claims against

the Pledged Collateral; (d) to exercise collection remedies against account debtors and other persons obligated on the Pledged Collateral directly or through the use of collection agencies and other collection specialists; (e) to advertise dispositions of the Collateral through publications or media of general circulation, whether or not the Pledged Collateral is of a specialized nature; (f) to contact other persons, whether or not in the same business as Grantor, for expressions of interest in acquiring all or any portion of the Pledged Collateral; (g) to hire one or more professional auctioneers to assist in the disposition of the Pledged Collateral, whether or not the Pledged Collateral is of a specialized nature; (h) to dispose of the Pledged Collateral by utilizing internet sites that provide for the auction of assets of the types included in the Pledged Collateral or that have the reasonable capability of doing so, or that match buyers and sellers of assets; (i) to dispose of assets in wholesale rather than retail markets; (j) to decline to provide credit to any potential purchaser of the Collateral in connection with Secured Party's disposition of the Pledged Collateral; (k) to disclaim disposition warranties; (l) to purchase insurance or credit enhancements to insure Secured Party against risks of loss, collection or disposition of the Collateral or to provide to Secured Party a guaranteed return from the collection or disposition of the Pledged Collateral; or (m) to the extent deemed appropriate by Secured Party, to obtain the services of other brokers, investment bankers, consultants and other professionals to assist Secured Party in the collection or disposition of any of the Collateral. Grantor acknowledges that the purpose of this <u>Section 12</u> is to provide non-exhaustive indications of what actions or omissions by Secured Party would fulfill Secured Party's duties under the UCC in Secured Party's exercise of remedies against the Pledged Collateral and that other actions or omissions by Secured Party shall not be deemed to fail to fulfill such duties solely on account of not being indicated in this <u>Section 12</u>. Without limitation upon the foregoing, nothing contained in this <u>Section 12</u> shall be construed to grant any rights to Grantor or to impose any duties on Secured Party that would not have been granted or imposed by this Agreement or by applicable law in the absence of this <u>Section 12</u>.

13.     **No Waiver and Cumulative Remedies**. Secured Party shall not by any act (except by a written instrument pursuant to <u>Section 17</u>), delay, indulgence, omission, or otherwise be deemed to have waived any right or remedy hereunder or to have acquiesced in any Default or Event of Default. All rights and remedies herein provided are cumulative and are not exclusive of any rights or remedies provided by law.

14.     **Security Interest Absolute**. All rights of Secured Party and Liens hereunder, and all Secured Obligations of Grantor hereunder, shall be absolute and unconditional irrespective of: (a) any illegality or lack of validity or enforceability of any Secured Obligation or any related agreement or instrument; (b) any change in the time, place, or manner of payment of, or in any other term of, the Secured Obligations, or any rescission, waiver, amendment, or other modification of the Loan Documents, including any increase in the Secured Obligations resulting from any extension of additional credit or otherwise; (c) any taking, exchange, substitution, release, impairment or non-perfection of any Pledged Collateral or any other collateral, or any taking, release, impairment, amendment, waiver or other modification of any guaranty, for all or any of the Secured Obligations; (d) any manner of sale, disposition, or application of proceeds of any Pledged Collateral or any other collateral or other assets to all or part of the Secured Obligations; (e) any default, failure, or delay, willful or otherwise, in the performance of the Secured Obligations; (f) any defense, set-off, or counterclaim (other than a defense of payment or performance) that may at any time be available to, or be asserted by, Grantor against Secured Party; or (g) any other circumstance (including any statute of limitations) or manner of administering the Loan or any existence of or reliance on any representation by Secured Party that might vary the risk of Grantor or otherwise operate as a defense available to, or a legal or equitable discharge of, Grantor or any other grantor, guarantor, or surety.

15.     **Continuing Security Interest**. This Agreement creates a continuing Lien in the Pledged Collateral and shall (a) subject to <u>Section 14</u>, remain in full force and effect until payment and performance in full of the Secured Obligations, (b) be binding upon Grantor and its successors and assigns, and (c) inure to the benefit of Secured Party and its successors, transferees, and assigns; *provided that* neither Grantor may not assign or otherwise transfer any of its rights or obligations under this Agreement without Secured Party's prior written consent.

16. **Termination; Release**. On the date on which all Secured Obligations have been paid and performed in full, Secured Party will, at the request and expense of Grantor, (a) duly assign, transfer, and deliver to or at the direction of Grantor (without recourse and without any representation or warranty) such of the Pledged Collateral as may then remain in the possession of Secured Party, together with any monies at the time held by Secured Party hereunder, (b) duly assign, transfer and deliver to or at the direction of Grantor (without recourse and without any representation or warranty) such of the Pledged Collateral as may then remain in the possession of Secured Party, together with any monies at the time held by Secured Party hereunder, and (c) execute and deliver to Grantor a proper instrument or instruments acknowledging the satisfaction and termination of this Agreement.

17. **Amendments, Etc**. No amendment or waiver of any provision of this Agreement nor consent to any departure by Grantor herefrom shall in any event be effective unless the same shall be in writing and signed by Secured Party, and then such waiver or consent shall be effective only in the specific instance and for the specific purpose for which given.

18. **Notices**. Any notice required or permitted to be given shall be given in writing and delivered to the respective parties at their addresses as specified on the signature pages hereof or as to either party at such other address as shall be designated by such party in a written notice to each other party by the following means: (a) by personal delivery, in which case notice shall be deemed delivered upon receipt; (b) by overnight delivery using a nationally recognized overnight courier that provides proof of delivery (such as next day service with FedEx or UPS), in which case notice shall be deemed delivered one business day after deposit with such courier; (c) by United States Postal Service registered or certified mail, return receipt requested, postage prepaid, in which case notice shall be deemed delivered three days after depositing the same in the U.S. mail; and/or (d) by e-mail, in which case notice shall be deemed delivered upon electric confirmation of e-mail delivery by sender's receipt of a delivery receipt and/or a read receipt or written acknowledgement from the recipient of the e-mail. The foregoing notwithstanding, for each notice that is delivered using any method above other than e-mail, a duplicate copy of the notice must also be delivered by e-mail, and, in such case, delivery will be deemed to occur on the later of (x) delivery of the original notice (as hereinabove set forth), and (y) delivery of the duplicate notice by e-mail (as hereinabove set forth).

19. **Headings**. The headings in this Agreement are for reference only and shall not affect the interpretation of this Agreement.

20. **Counterparts; Electronic Signatures**. This Agreement may be executed in counterparts, each of which shall constitute an original, and all of which shall constitute one and the same instrument. Electronic or facsimile signatures shall have the same legal effect as originals.

21. **Governing Law; Terms, Venue**.

   21.1   This Agreement shall be governed by and construed in accordance with the laws of the state of Delaware. Venue for any proceeding shall take place in the state of New York.

   21.2   Grantor irrevocably and unconditionally agrees that it will not commence any action, litigation, or proceeding of any kind whatsoever, whether in law or equity, or whether in contract or tort or otherwise, against Secured Party in any way relating to this Agreement, the Note, or the transactions contemplated hereby or thereby, in any forum other than the courts of the state of New York, and of the United States District Court of New York, and any appellate court from any thereof, and each of the parties hereto irrevocably and unconditionally submits to the jurisdiction of such courts and agrees that any such action, litigation or proceeding may be brought in any such New York court or, to the fullest extent permitted by applicable law, in such federal court. Each of the parties hereto agrees that a final judgment in any such action, litigation, or proceeding shall be conclusive and may be enforced in other jurisdictions by suit on the judgment or in any

12

other manner provided by law. Nothing herein shall affect any right that Secured Party may otherwise have to bring any action or proceeding relating to this Agreement against Grantor or its properties in the courts of any jurisdiction.

21.3    Grantor irrevocably and unconditionally waives, to the fullest extent permitted by applicable law, any objection that it may now or hereafter have to the laying of venue of any action or proceeding arising out of or relating to this Agreement in any such court referred to in <u>Section 21.2</u>. Each of the parties hereto hereby irrevocably waives, to the fullest extent permitted by applicable law, the defense of an inconvenient forum to the maintenance of such action or proceeding in any such court.

21.4    Grantor irrevocably consents to the service of process in the manner provided for notices in <u>Section 18</u> and agrees that nothing herein will affect the right of any party hereto to serve process in any other manner permitted by applicable law.

22.    <u>WAIVER OF TRIAL BY JURY</u>. GRANTOR AND SECURED PARTY HEREBY KNOWINGLY, IRREVOCABLY, VOLUNTARILY AND INTENTIONALLY WAIVE TO THE FULLEST EXTENT PERMITTED BY APPLICABLE LAW ANY RIGHT IT MAY HAVE TO A TRIAL BY JURY IN RESPECT OF ANY ACTION, PROCEEDING, DEFENSE OR COUNTERCLAIM DIRECTLY OR INDIRECTLY BASED ON OR RELATING TO THIS AGREEMENT, THE NOTE, OR THE TRANSACTIONS CONTEMPLATED HEREBY OR THEREBY, OR ARISING OUT OF, UNDER OR IN CONNECTION WITH THIS AGREEMENT, THE NOTE, OR ANY OTHER SECURITY DOCUMENT, OR ANY COURSE OF CONDUCT, COURSE OF DEALING, STATEMENTS (WHETHER VERBAL OR WRITTEN) OR ACTIONS OF ANY PARTY HERETO OR TO ANY SECURITY DOCUMENT. THIS PROVISION IS A MATERIAL INDUCEMENT FOR GRANTOR AND SECURED PARTY ENTERING INTO THE SUBJECT TRANSACTION.

23.    <u>Publicity</u>. No party to this Agreement shall have the right to publicize any other party's involvement in the Loan without such other party's prior written approval.

*[Signature Pages Follow]*

IN WITNESS WHEREOF, the parties hereto have caused this Agreement to be duly executed and delivered by its officer thereunto duly authorized as of the date first above written.

**GRANTOR**:

Validus Broker Dealer Investment Management Company, LLC, a Florida limited liability company

By: _____

Name: Mario Garcia, Jr.

Title:  Manager

[Signature Page 1 of 2 – Security and Pledge Agreement]

**SECURED PARTY**:

**I.B.I VOLCANO INVESTMENTS LLC**,
a Delaware limited liability company

By: _____
Name: Ziv Sapir
Title: Chief Executive Officer

Address for Notices:
I.B.I Volcano Investments LLC
Shalom Tower, 18th Floor
9 Ahad Ha'am Street, 65251
Tel Aviv, Israel
Attn: Ziv Sapir
Email: Ziv_S@IBI.co.il

with a copy (which shall not constitute notice) to:
Bryan Cave Leighton Paisner LLP
1155 F Street NW
Washington, D.C. 20004-1357
Attn: Jonathan S. Nesher, Esq.
Email: jonathan.nesher@bclplaw.com

**Schedule 1**
**Pledged Equity**

| Issuer | Registered Owner | Type of Equity Interests | Number of Shares |
|---|---|---|---|
| SCHMID Group N.V. | Validus Broker Dealer Investment Management Company, LLC | Common Stock | 2,156,988 |

# GUARANTY

THIS GUARANTY (this "**Guaranty**") is entered into as of June 12, 2024, by (i) Mario Garcia, Jr., an individual ("**Garcia**"), (ii) Mark Levey, an individual ("**Levey**") and (iii) Robert Winslow, an individual ("***Winslow***", and Winslow, jointly and severally with Garcia and Levey, the "***Guarantor***") for the benefit of **I.B.I. VOLCANO INVESTMENTS LLC**, a Delaware limited liability company, having an address at Shalom Tower, 18th Floor, 9 Ahad Ha'am Street, 65251, Tel Aviv, Israel (together with its successors and/or assigns, "**Lender**").

# RECITALS

WHEREAS:

A.  Lender has made or may make a loan to Validus Broker Dealer Investment Management Company, LLC, a Florida limited liability company ("**Borrower**"), in the amount of TWO MILLION THREE HUNDRED AND FIFTY THOUSAND AND 00/100 DOLLARS ($2,350,000.00) (the "**Loan**") evidenced by that certain Secured Promissory Note of even date herewith (as the same may be amended, restated, supplemented or otherwise modified from time to time, the "**Note**") made by Borrower and payable to the order of Lender.

B.  As a condition to extending such credit to Borrower, Lender has required the execution and delivery of this Guaranty.

NOW, THEREFORE, in order to induce Lender to make the Loan to Borrower, and in consideration thereof, Guarantor agrees as follows:

1.  All capitalized terms used, but not otherwise defined, in this Guaranty shall have the meanings ascribed to them in Note.

2.  Guarantor hereby absolutely, unconditionally and irrevocably guarantees to Lender, the full and prompt payment in full (and not merely the collectability) of the obligations of Borrower from time to time arising under the Note (as the same may be extended, modified, renewed or consolidated) and the Security and Pledge Agreement, dated as of even date herewith, made by Borrower in favor of Lender (the "**Security Agreement**," and together with this Guaranty and the Note, as each of the same may be amended, restated, supplemented or otherwise modified from time to time, the "**Loan Documents**") or otherwise with respect to the due and punctual payment of (i) the principal of and premium, if any, and interest on the Loan (including interest accruing during the pendency of any bankruptcy, insolvency, receivership or other similar proceeding, regardless of whether allowed or allowable in such proceeding), when and as due, whether at maturity, by acceleration, upon one or more dates set for prepayment or otherwise and (ii) all other monetary obligations, including fees, costs, attorneys' fees and disbursements, reimbursement obligations, expenses and indemnities, whether primary, secondary, direct, contingent, fixed or otherwise (including monetary obligations incurred during the pendency of any bankruptcy, insolvency, receivership or other similar proceeding, regardless of whether allowed or allowable in such proceeding), of Borrower under the Loan Documents; and (iii) all other agreements, duties, indebtedness, obligations and liabilities of any kind of Borrower under, out of, or in connection with the Loan Documents or any other document made, delivered or given in connection with any of the foregoing, in each case whether now existing or hereafter arising, whether evidenced by a note or other writing, whether allowed in any bankruptcy, insolvency, receivership or other similar proceeding, whether arising from an extension of credit, issuance of a letter of credit, acceptance, loan, guaranty, indemnification or otherwise, and whether direct or indirect, absolute or contingent, due or to become due, primary or secondary, or joint or several (all such obligations, liabilities, sums and expenses set forth in this Section 2 being herein collectively called "**Guaranteed**

ACTIVE:23173457.3

**Amount**").

3.      The obligations of Guarantor under this Guaranty shall survive any foreclosure proceeding, any foreclosure sale, any delivery of any deed in lieu of foreclosure (or any assignment-in-lieu of foreclosure to Lender of the interests in any subsidiary of the Borrower), and any release of any lien securing the Note.

4.      Guarantor's obligations under this Guaranty are completely independent of the obligations of the Borrower and, except as may be limited by the express terms of this Guaranty, constitute a direct, unconditional guaranty of payment and not merely a guaranty of collection. The liability of Guarantor hereunder shall not be affected by the acceptance of any settlement or compromise offered by the Borrower or any Other Guarantor (as hereinafter defined) either in liquidation, readjustment, receivership, bankruptcy or otherwise. Nothing contained herein or otherwise shall prevent Lender from pursuing, concurrently or successively, all other rights and remedies at law or in equity under the Note, the Security Agreement or otherwise.

5.      (a) The obligations of Guarantor under this Guaranty shall be performed without demand by Lender and shall be unconditional, irrespective of the genuineness, validity, regularity or enforceability of the Note or the Security Agreement, and without regard to any other circumstance which might otherwise constitute a legal or equitable discharge of a surety or a guarantor. Guarantor hereby knowingly, voluntarily, intentionally, unconditionally and irrevocably waives the benefit of (i) all principles or provisions of law, statutory or otherwise, which are or might be in conflict with the terms, provisions, covenants or conditions of this Guaranty, (ii) any right of discharge under any and all statutes or other laws relating to guarantors or sureties and any other rights of sureties and guarantors thereunder, and (iii) diligence, presentment, demand for payment, protest, all notices which may be required by statute, rule of law or otherwise to preserve Lender's rights against Guarantor under this Guaranty, including, but not limited to, notice of acceptance, notice of any amendment of the Note, notice of the occurrence of any default or Event of Default (either under this Guaranty or under the Note or the Security Agreement), notice of intent to accelerate, notice of acceleration, notice of dishonor, notice of foreclosure, notice of protest, and notice of the incurring by the Borrower of any obligation or indebtedness.

(b)      Guarantor hereby knowingly, voluntarily, intentionally, unconditionally and irrevocably waives all rights to require Lender to (i) proceed against any of the Borrower or any other guarantor of the Borrower's payment or performance with respect to any Guaranteed Amount (each of the aforesaid, an "**Other Guarantor**"), (ii) if the Borrower or any Other Guarantor is a partnership or limited liability company, proceed against any general partner, manager or managing member (as applicable) of the Borrower or Other Guarantor, or (iii) pursue any other remedy Lender may now or hereafter have against the Borrower or any Other Guarantor, or, if the Borrower or any Other Guarantor is a partnership or limited liability company, any general partner or manager or managing member (as applicable) of the Borrower or any Other Guarantor under any Loan Document or otherwise.

(c)      Guarantor hereby knowingly, voluntarily, intentionally, unconditionally and irrevocably waives any and all defenses of any and every kind to any action or proceeding brought to enforce this Guaranty or any part of this Guaranty either at law or in equity, except a single defense based on Guarantor's or the Borrower's having actually paid the Guaranteed Amount to Lender. Without limiting the foregoing in any way but merely by way of illustration, Guarantor hereby knowingly, voluntarily, intentionally, unconditionally and irrevocably waives (x) any and all technical, dilatory or nonmeritorious defenses and (y) all defenses predicated upon:

(i)      Disability on the part of any of the Borrower, Guarantor or any Other Guarantor;

ACTIVE:23173457.3

(ii)     Any change, alteration, supplementation, amendment or modification in any of the Note or the Security Agreement, whether with or without the knowledge or consent of Guarantor or any Other Guarantor;

(iii)     Failure, omission, delay, indulgence or forbearance in the enforcement of any term, provision, covenant or condition of any of the Note or Security Agreement including, without limitation, any term for the payment of any principal, interest or Guaranteed Amount;

(iv)     Change of ownership of the Borrower or any partnership interest or membership interest (as applicable) in the Borrower;

(v)     Acquisition of any additional security or collateral;

(vi)     Substitution of different security or collateral in exchange or exchanges for part or parts of the original or additional security or collateral;

(vii)     The fact that there may be persons other than Guarantor who are solvent and responsible for the payment of the Guaranteed Amount (whether or not having assumed such obligation in whole or in part in connection with any transfer of any partnership, membership or beneficial interest (as applicable) in the Borrower);

(viii)     Any counterclaim (except any compulsory counterclaim), defense, right of set off, or claim which any of the Borrower, Guarantor or any Other Guarantor may have against Lender or the enforceability of any of the Note or the Security Agreement;

(ix)     The invalidity, irregularity or unenforceability of any of the Note or the Security Agreement;

(x)     Any voluntary or involuntary liquidation, dissolution, sale of all or substantially all of any property, marshalling of assets and liabilities, receivership, insolvency, bankruptcy, assignment for the benefit of creditors, reorganization, arrangement, composition or readjustment of, or other similar application or proceeding affecting any of the Borrower, Guarantor and/or any Other Guarantor or any of its, his, her or their assets;

(xi)     Any sale, transfer or conveyance of any equity interest or any direct or indirect legal or beneficial interests in Borrower or any other assets or property of the Borrower, to any person or entity; and/or

(xii)     Any release of the Borrower and/or any Other Guarantors by operation of law or by agreement with Lender, from the performance or observance of any of the terms, provisions, covenants or conditions contained in any of the Note, the Security Agreement or elsewhere.

6.     At any time or from time to time and any number of times, without notice to Guarantor and without affecting the liability of Guarantor under this Guaranty, (a) the time for payment of any principal, interest or other Guaranteed Amount may be extended; (b) the time for the Borrower's performance of or compliance with any term, provision, covenant or condition contained in the Note or the Security Agreement, whether presently existing or hereinafter entered into, may be extended or such performance or compliance may be waived; (c) the due date of any principal, interest or other Guaranteed Amount may be accelerated as provided in the Note or the Security Agreement; (d) the Note or the Security Agreement may be modified, extended or amended in any respect by agreement between or among Lender, on the one

ACTIVE:23173457.3

hand, and any one or more of the Borrower, and Guarantor, on the other hand, including, but not limited to, to provide for an increase in the Loan; and (e) any security for any of the principal, interest or other Guaranteed Amount may be pledged or mortgaged to secure any of the obligations under the Note or other Guaranteed Amount.

7.      Guarantor shall not, at any time during the continuance of an Event of Default, sell, pledge, mortgage or otherwise transfer to any Person any of Guarantor's assets, or any interest therein.

8.      If any payment made by or on behalf of the Borrower (including any payment under this Guaranty) is held to constitute a preference under the Bankruptcy Code or any applicable bankruptcy, insolvency, or similar laws, or if for any reason Lender is required to refund any sums to any of the Borrower, Guarantor or any of their respective Affiliates, such amounts shall not constitute a release of any liability of Guarantor under this Guaranty. It is the intention of Lender and Guarantor that Guarantor's obligations under this Guaranty shall not be discharged except upon the performance of such obligations and then only to the extent of such performance.

9.      (a) Any indebtedness owed to Guarantor by the Borrower ("**Guarantor Indebtedness**") now or in the future is and shall be subordinated to all obligations (including, without limitation, all principal, interest under the Note and other Guaranteed Amount) of the Borrower to Lender. Guarantor acknowledges and agrees that Guarantor shall not (i) demand or accept any payment or satisfaction of any Guarantor Indebtedness, and (ii) claim any offset or other reduction of Guarantor's obligations hereunder because of any such Guarantor Indebtedness; provided, however, that, if Lender so requests, such Guarantor Indebtedness shall be collected, enforced and received by Guarantor as trustee for Lender and be paid over to Lender on account of any sums or payments (including, without limitation, any principal, interest or other Guaranteed Amount) owed or payable by the Borrower to Lender, but without reducing or affecting in any manner the liability of Guarantor under the other terms, provisions, covenants and conditions of this Guaranty.

(b)      Guarantor hereby assigns to Lender all right, title, and interest in any Guarantor Indebtedness, including, without limitation, the right to file proof of claim and to vote thereon in connection with any bankruptcy, insolvency, or reorganization proceeding, and including the right to vote on any plan of arrangement or reorganization. Further, Guarantor hereby agrees that following any Event of Default under the Note or Event of Default under this Guaranty or under the Security Agreement, (i) Guarantor shall not accept payment from any Other Guarantor by way of contribution on account of any payment made hereunder by Guarantor to Lender, (ii) Guarantor shall not take any action to exercise or enforce any rights to such contribution, and (iii) if, notwithstanding the prohibition set forth in Section 9(a) hereof, Guarantor should receive any payment, satisfaction or security for any Guarantor Indebtedness or for any contribution by any Other Guarantor for payment made hereunder by Guarantor to Lender, the same shall be delivered to Lender in the form received, endorsed or assigned as may be appropriate for application on account of or as security for any obligations (including, without limitation, any principal and interest under the Note or other Guaranteed Amount) owed or payable by the Borrower to Lender and, until so delivered, shall be held in trust for Lender as security for any such obligations owed or payable by the Borrower and any such Other Guarantor to Lender.

10.      Guarantor shall have no right of, and hereby waives any right or claim for, subrogation or reimbursement against the Borrower, any member of the Borrower or any subsidiary of the Borrower by reason of any payment by Guarantor under this Guaranty, whether such right or claim arises at law or in equity or under any contract or statute.

11.      The occurrence of any of the following events (each, an "**Event of Default**") shall be an Event of Default under this Guaranty:

4

ACTIVE:23173457.3

(a)    the death or incapacity of Guarantor, unless within thirty (30) days following such death or incapacity, the estate representative of Guarantor acknowledges the obligation evidenced by this Guaranty, and provides a substitute Guarantor which is acceptable to Lender in its sole discretion, or assurances acceptable to Lender in its sole discretion that there has occurred no material adverse change in the ability of Guarantor (or his or her estate) to perform his or her obligations under this Guaranty since the last financial statement provided to Lender;

(b)    a default in the payment of any sums when due under this Guaranty; or

(c)    if there should occur and continue at any time one or more conditions or events which, in the reasonable opinion of Lender, has resulted in a material adverse change in the financial condition of Guarantor which is reasonably likely to impair Guarantor's ability to perform Guarantor's monetary obligations under this Guaranty.

12.    Lender may assign Lender's rights under this Guaranty in whole or in part to any of its affiliates without the consent of Guarantor and upon any such assignment all of the terms, provisions, covenants and conditions of this Guaranty shall inure to the benefit of such assignee to the extent so assigned. Guarantor may not assign Guarantor's rights under this Guaranty in whole or in part without the consent of Lender.  The terms used to designate any of the parties herein shall be deemed to include the heirs, legal representatives, successors and assigns of such parties; and the term "Lender" shall include, in addition to Lender, any lawful owner, holder or pledgee of this Guaranty.

13.    This Guaranty, the Note and the Security Agreement represent the final agreement among Lender, the Borrower and Guarantor with respect to the subject matter hereof and thereof, as applicable, and may not be contradicted by evidence of prior, contemporaneous or subsequent oral agreements with respect to the same. There are no unwritten oral agreements between the parties with respect to the Loan Documents or the subject matter thereof. All prior or contemporaneous agreements, understandings, representations, and statements with respect to the Loan Documents and the subject matter thereof, oral or written, are merged into this Guaranty, the Note and the Security Agreement, as applicable. Neither this Guaranty nor any of this Guaranty's terms, provisions, covenants or conditions may be waived, modified, amended, discharged, or terminated except by an agreement in writing signed by the party against which the enforcement of the waiver, modification, amendment, discharge, or termination is sought, and then only to the extent set forth in that agreement.

14.    Guarantor shall defend, indemnify and hold Lender and its members, managers, employees, agents, representatives, successors, and assigns harmless from and against any and all loss, cost, expense, liability or obligation (including, without limitation, reasonable attorneys' fees and disbursements actually incurred) that Lender may incur in connection with or related to (a) any breach by Guarantor (or any person or entity constituting Guarantor) of any of the terms, provisions, covenants or conditions of this Guaranty, or (b) the payment of any tax, fee, assessment or other charge imposed by any governmental authority which is attributable to the execution, delivery or filing of this Guaranty.

15.    (a) This Guaranty shall be construed in accordance with the laws of the State of Delaware without reference to principles of conflicts of law. If any part of this Guaranty shall not be valid under the laws of the State of Delaware or under any other applicable law, such part shall be rendered inoperative, but the remainder of this Guaranty shall be enforceable.

(b)    **ANY LEGAL SUIT, ACTION OR PROCEEDING AGAINST LENDER OR GUARANTOR ARISING OUT OF OR RELATING TO THIS GUARANTY MAY AT LENDER'S OPTION BE INSTITUTED IN ANY FEDERAL OR STATE COURT IN THE STATE OF NEW**

ACTIVE:23173457.3

Case 1:25-cv-07928    Document 1-1    Filed 09/24/25    Page 44 of 79

**YORK, AND GUARANTOR WAIVES ANY OBJECTIONS WHICH IT MAY NOW OR HEREAFTER HAVE BASED ON VENUE AND/OR FORUM NON CONVENIENS OF ANY SUCH SUIT, ACTION OR PROCEEDING, AND GUARANTOR HEREBY IRREVOCABLY SUBMITS TO THE JURISDICTION OF ANY SUCH COURT IN ANY SUIT, ACTION OR PROCEEDING.**

16.     No delay on the part of Lender in exercising any power or right hereunder or under any of the other Loan Documents shall operate as a waiver thereof; nor shall any single or partial exercise of any power or right hereunder or under any of the other Loan Documents or the failure to exercise the same in any instance preclude other or further exercise thereof or the exercise of any other power or right; nor shall Lender be liable for exercising or failing to exercise any such power or right; the rights and remedies expressly specified hereunder and under the Note and Security Agreement are cumulative and not exclusive of any rights or remedies which Lender may or shall otherwise have.

17.     Any notice to be given under this Guaranty shall be made in writing and sent by personal delivery, reputable overnight courier or by e-mail, as follows:

If to a Guarantor, to the address or addresses set forth below.

Mark Levey:
1810 West Kennedy Blvd.
Tampa, FL 33606
Email: mark@levey.org

Robert Winslow:
8 Isle of Sicily
Winter Park, FL 32789
Email: bobw.global@gmail.com

Mario Garcia, Jr.:
3504 Cragmont Drive, Suite 100
Tampa, FL 33619
Email: mgarcia@wecontrolpain.com

with a copy to:

Gunster, Yoakley & Stewart, P.A.
601 Bayshore Blvd., Suite 700
Tampa, Florida 33606
Attention:  David L. Koche
Email: dkoche@barnettbolt.com

If to Lender:

I.B.I Volcano Investments LLC Shalom Tower, 18th Floor
9 Ahad Ha'am Street, 65251 Tel Aviv, Israel
Attention: Ziv Sapir
E-mail: Ziv_S@IBI.co.il

with a copy to:
Bryan Cave Leighton Paisner LLP
1155 F Street NW Washington, DC 20004-1357

ACTIVE:23173457.3

Attention: Jon Nesher
E-mail: jonathan.nesher@bclplaw.com

Any such notice shall be deemed to be delivered, given and received for all purposes (i) as of the date delivered (or the date delivery is refused), if delivered by personal delivery or by a nationally recognized overnight delivery service, (ii) if sent by e-mail, as of the date of receipt of electronic confirmation of sending, if such confirmation is received prior to 5:30 p.m. Eastern Time on any Business Day, and if received after 5:30 p.m. or on any day other than a Business Day, then as of the next Business Day immediately following. Any delivery by e-mail shall only be deemed effective if an additional copy of such notice is sent by personal delivery or commercial delivery service on the date of e-mail delivery. Any notice party may change its notice address hereunder by giving notice of such change to the other parties in conformity with this Section 17.

18.    Guarantor shall execute, acknowledge and deliver, at Guarantor's sole cost and expense, all further agreements, documents, acts, conveyances, assignments, transfers and/or assurances as Lender may require from time to time in order to further clarify, assure, grant or convey to Lender the rights intended to be granted, now or in the future, to Lender under this Guaranty.

19.    This Guaranty shall be construed without regard to any presumption or other rule requiring construction against the party causing this Guaranty to be drafted.

20.    This Guaranty may be executed in separate counterparts which, when taken together, shall constitute one fully executed Guaranty.

21.    Guarantor hereby represents, warrants and covenants that:

(a)    This Guaranty is a legal, valid and binding instrument, enforceable against him in accordance with its terms.

(b)    To the extent Guarantor is an entity, (I) Guarantor (a) is a limited liability company duly formed, validly existing, and in good standing under the laws of the state of its jurisdiction of organization, (b) has duly executed and delivered this Guaranty, (c) has the requisite power and authority, and the legal right, to own, lease, and operate its properties and assets and to conduct its business as it is now being conducted, to execute and deliver this Guaranty, and to perform its obligations hereunder, and (d) is in compliance with all Laws, (II) the execution and delivery by Guarantor of this Guaranty and the performance of its obligations hereunder have been duly authorized by all necessary limited liability (or similar corporate) action in accordance with all applicable Laws and (III) no consent or authorization of, filing with, notice to, or other act by, or in respect of, any Governmental Authority or any other person is required in order for Guarantor to execute, deliver, or perform any of its obligations under this Guaranty.

(c)    The most recent financial statements of Guarantor which have been delivered to Lender are true and correct in all material respects and fairly present the financial condition of Guarantor as of such date, and since the date of such financial statements there have been no material adverse changes in such condition or operations.

(d)    There are no actions, suits or proceedings pending or, to the best of his knowledge, threatened against or affecting Guarantor or the properties of Guarantor before any court, governmental department, commission, board, bureau, agency or instrumentality, which would have a material adverse effect on the financial conditions, properties or operations of Guarantor.

(e)    Guarantor is not a party to any indenture, loan or credit agreement or any lease or

7

other agreement or instrument or subject to any charter or other restriction which would have a material adverse effect on the ability of Guarantor to carry out his obligations under this Guaranty.

        (f)      No information, exhibit or report furnished by Guarantor to Lender in connection with the negotiation of this Guaranty contained, as of the date thereof, or, if there be no such date, the date of furnishing thereof, any material misstatement of fact or omitted to state a material fact or any fact necessary to make the statements contained therein not misleading.

        22.     GUARANTOR HEREBY KNOWINGLY, VOLUNTARILY, INTENTIONALLY, UNCONDITIONALLY AND IRREVOCABLY WAIVES (I) TRIAL BY JURY IN ANY ACTION OR PROCEEDING COMMENCED BY LENDER AGAINST GUARANTOR UNDER THIS GUARANTY AND (II) THE RIGHT, IN ANY SUCH ACTION OR PROCEEDING, TO INTERPOSE DEFENSES, CLAIMS, COUNTERCLAIMS (OTHER THAN COMPULSORY COUNTERCLAIMS) OR SETOFFS OF ANY KIND OR DESCRIPTION.

        23.     The term "Guarantor" as used herein shall be deemed to mean each Guarantor named as a party hereto, either individually or collectively as the context requires. Notwithstanding the foregoing, each such Guarantor shall remain jointly and severally liable for the entire Guaranteed Amount.

        24.     If Guarantor fails to pay all or any sums due hereunder upon demand by Lender, the amount of such sums payable by Guarantor to Lender shall bear interest from the date of demand until paid at an interest rate per annum equal to the lesser of (a) the maximum rate permitted by applicable law, and (b) two percent (2.0%) above the applicable interest rate in the Note, compounded monthly and computed based on the actual number of days in each monthly payment period and a 365-day year.

*[The Remainder of this Page is Intentionally Left Blank.]*

ACTIVE:23173457.3

IN WITNESS WHEREOF, each Guarantor has executed this Guaranty as of the date first set forth above.

**GUARANTORS:**

_____

Mario Garcia Jr.

IN WITNESS WHEREOF, each Guarantor has executed this Guaranty as of the date first set forth above.

**GUARANTORS:**

_____

Mark Levey

[*Signature Page to Guaranty*]

IN WITNESS WHEREOF, each Guarantor has executed this Guaranty as of the date first set forth above.

GUARANTORS:

Robert Winslow

July 14, 2025



**Bryan Cave Leighton Paisner**

Chris LaRocco
Direct: 212-541-3163
chris.larocco@bclplaw.com

BRYAN CAVE LEIGHTON PAISNER LLP
1290 Avenue of the Americas
New York NY 10104 3300
T: +1 212 541 2000
F: +1 212 541 4630
**bclplaw.com**

**VIA ELECTRONIC MAIL & FEDEX**

Mark Levey
1810 West Kennedy Blvd.
Tampa, FL 33606
Email: mark@levey.org

Mario Garcia, Jr.:
3504 Cragmont Drive, Suite 100
Tampa, FL 33619
Email: mgarcia@wecontrolpain.com

Robert Winslow
8 Isle of Sicily
Winter Park, FL 32789
Email: bobw.global@gmail.com

Gunster, Yoakley & Stewart, P.A.
601 Bayshore Blvd., Suite 700
Tampa, Florida 33606
Attention: David L. Koche
Email: dkoche@barnettbolt.com

Re: ***Notice of Default, Demand for Payment, Notice of Initiation of Litigation & Notice of Reservation of Rights***

Dear Messrs. Garcia, Jr., Levey, and Winslow:

This firm represents I.B.I Volcano Investments LLC (**"Lender"**) in connection with a Secured Promissory Note executed by Validus Broker Dealer Investment Management Company, LLC (**"Borrower"**). Reference is made to the following documents each of which evidence, secure, or otherwise relate to the Secured Promissory Note. Capitalized terms herein have the same meanings defined in the referenced documents, except where otherwise defined:

- That certain Secured Promissory Note dated as of June 12, 2024, executed by Borrower in favor of Lender (**"Secured Promissory Note"**);

- That certain Security and Pledge Agreement dated as of June 12, 2024, by Borrower in favor of Lender (**"Security Agreement"**);

- That certain Guaranty entered into as of June 12, 2024 by Mario Garcia, Jr., Mark Levey, and Robert Winslow, each jointly and severally as Guarantor (**"Guarantor"**) in favor of Lender (**"Guaranty"**).

The above-described documents, together with all other documents or instruments evidencing, securing, or otherwise relating to the transaction, as amended, modified, supplemented, renewed, reaffirmed, or otherwise modified at any time, and from time to time, are herein individually referred to as a **"Loan Document"** and collectively referred to as the **"Loan Documents."**

Garcia, Jr., Levey, and Winslow
July 14, 2025
Page 2



**BCLP.**
Bryan Cave Leighton Paisner

## NOTICE OF DEFAULT

Based on Lender's knowledge and belief, Events of Default under the Loan Documents have occurred and are continuing as a result of, among other things:

- Borrower's failure to pay amounts required to be paid under Section B of the Secured Promissory Note, including interest and principal now due; and

- Guarantor's default in the payment of sums due to Lender under the Guaranty

Furthermore, Section E of the Secured Promissory Note provides, "All principal and installments of interest shall bear interest from the date that said payments are due and unpaid or from the date of occurrence of any other Event of Default (as hereinafter defined) under this Note, the Security Agreement, or any other Loan Document, at a rate equal to the Interest Rate plus five percent (5%) (the "**Default Rate**")."

Section G(2) of the Secured Promissory Note provides, "Lender may collect a late charge not to exceed an amount equal to five percent (5%) of any installment which is not paid within ten (10) calendar days after the due date thereof, to cover the extra expense involved in handling delinquent payments, provided that collection of said late charge shall not be deemed a waiver by the Lender of any of its rights under this Note."

**Lender hereby demands that, within fifteen (15) days of your receipt of this Notice of Default, Guarantor remit to Lender all sums due under the Guaranty and foregoing Loan Documents in satisfaction of all amounts due and owing in relation to the Secured Promissory Note. Failure to remit the total amount due within fifteen (15) days from receipt of this Notice will result in Lender taking legal action against each Guarantor.**

The total amount currently due and owing to Lender under the Secured Promissory Note, and thus the Guaranty, is $2,520,024.00.

## RESERVATION OF RIGHTS

There may be additional Events of Default or other defaults under the terms of the Loan Documents, and Lender does not waive any right to call any such defaults in the future and hereby reserves all rights and remedies against Borrower and Guarantor as a result thereof. Lender reserves all rights and remedies under the Loan Documents under applicable laws and in equity, in connection with the foregoing Events of Default, and further reserves all rights and remedies with respect to any other defaults now or hereafter in existence, whether known or unknown. Please be advised that under the Loan Documents, Lender is not obligated to provide any further notices prior to the exercise of remedies by Lender with respect to the foregoing Events of Default. Nothing contained herein may be construed as the creation of a course of dealing or course of performance which would entitle Borrower and Guarantor to any notices or demands with respect to any such matters going forward.

Garcia, Jr., Levey, and Winslow
July 14, 2025
Page 3



Until Borrower and/or Guarantor pay Lender in full, interest on the Secured Promissory Note will continue to accrue at the Default Rate and Borrower and/or Guarantor shall be obligated to pay all Lender's costs of collection, together with all other costs and expenses owed by Borrower and Guarantor to Lender under the terms of the Loan Documents. Neither this notice nor any discussions by Lender with you or other representatives of Borrower or Guarantor, nor Lender's acceptance of payments less than the full amount due and payable under the Loan Documents constitutes: (a) Lender's waiver of any default(s) by Borrower and Guarantor under the Loan Documents whether or not referred to in any prior notice(s) of default(s); (b) Lender's election of remedies with respect to any such default(s), as Lender reserves all rights and remedies under the law and under the Loan Documents; (c) a waiver, modification, relinquishment, or forbearance by Lender of any right or remedy under the Loan Documents or under law, all of which Lender expressly reserves; or (d) a modification of any of the Loan Documents. For avoidance of doubt, any prior waiver or agreement to forbear is hereby revoked.

No modification of the Loan Documents and no other agreement or understanding of any nature shall be deemed to have been entered into by or binding on Lender unless and until Lender, Borrower, and Guarantor have reached an agreement on all issues, and such entire agreement shall have been reduced to a written document(s) that expressly states that it modifies the Loan Documents and is duly executed by Lender, Borrower, and Guarantor or similar indemnitor party to the transaction. Oral agreements, emails, memoranda or meetings, summaries or proposed terms shall have no effect whatsoever and shall not be binding on Lender.

You may contact the undersigned for a statement of the amounts due as of any particular payment date. If you have any questions, please do not hesitate to contact the undersigned.

Sincerely,

Chris LaRocco

cc:  Jonathan S. Nesher, Esq. (*via email,* jonathan.nesher@bclplaw.com)
  Brandon Gershowitz (*via email,* brandon.gershowitz@bclplaw.com)
  Anoop Sadanandan (*via email,* anoop.sadanandan@bclplaw.com)

## VBDIMC Cashflow

**VBDIMC**

| Date | 4/11/2024 | 5/12/2024 | 20/12/2024 | 10/1/2025 | 6/2/2025 | 10/3/2025 |
|---|---|---|---|---|---|---|
| Open Balance | 2,350,000 | 2,350,000 | 2,350,000 | 2,350,000 | 2,350,000 | 2,350,000 |
| ROC | 0 | 0 | 0 | 0 | 0 | 0 |
| Close Balance | 2,350,000 | 2,350,000 | 2,350,000 | 2,350,000 | 2,350,000 | 2,350,000 |
| Days | 145 | 31 | 15 | 21 | 27 | 32 |
| Interest due | 121,363 | 25,947 | 12,555 | 17,577 | 22,599 | 26,784 |
| | | | | | | |
| Interest paid | 49,543 | 55,660 | 0 | 18,961 | 18,961 | 17,126 |
| Accrued interest | 71,820 | 42,107 | 54,662 | 53,278 | 56,915 | 66,573 |

| Debt composition | VBDIMC |
|---|---|
| Capital balance | 2,350,000 |
| Accumulated interest | 169,361 |
| Fees left to pay | 0 |
| Late charges | 8,468 |
| **Total** | **2,527,829** |

*As of Today: 8/4/2025

| VBDIMC | | | | | |
|---|---|---|---|---|---|
| Payments Date | Amount | Roc | Interest | Fee | Legal |
| 12/6/2024 | 70,000 | | | 47,000 | 23,000 |
| 4/11/2024 | 49,543 | | 49,543 | | |
| 5/12/2024 | 55,660 | | 55,660 | | |
| 20/12/2024 | 47,000 | | | 47,000 | |
| 10/1/2025 | 18,961 | | 18,961 | | |

| Date | | |
|---|---|---|
| 6/2/2025 | 18,961 | 18,961 |
| 10/3/2025 | 17,126 | 17,126 |
| 11/4/2025 | 18,961 | 18,961 |
| 23/5/2025 | 18,349 | 18,349 |

| Total paid so far: | 314,561 | 0 | 197,561 | 94,000 | 23,000 |
|---|---|---|---|---|---|

| Total Paid + Owed: | 2,842,390 |
|---|---|

|  |  |  | 18%<br>Default rate start |  |
|---|---|---|---|---|
| 11/4/2025 | 23/5/2025 | 12/6/2025 | 4/8/2025 | 31/7/2025 |
| 2,350,000 | 2,350,000 | 2,350,000 | 2,350,000 | 2,350,000 |
| 0 | 0 | 0 | 0 | 0 |
| 2,350,000 | 2,350,000 | 2,350,000 | 2,350,000 | 2,350,000 |
| 32 | 42 | 20 | 53 | -4 |
| 26,784 | 35,153 | 16,740 | 61,422 | -4,636 |
|  |  |  |  |  |
| 18,961 | 18,349 | 0 | 0 | 0 |
| 74,395 | 91,200 | 107,939 | 169,361 | 164,726 |

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK

_ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ x

I.B.I VOLCANO INVESTMENTS LLC,                    :

                            Plaintiff,            :

                                                       Index No.:
                - against -                       :

MARIO GARCIA, JR., MARK LEVEY, ROBERT             :
WINSLOW,

                                                  :

                            Defendants.

_ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ x


## MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF'S
## MOTION FOR SUMMARY JUDGMENT IN LIEU OF COMPLAINT


**BRYAN CAVE LEIGHTON PAISNER LLP**
1290 Avenue of the Americas
New York, New York 10104
Tel: (212) 541-2000
Fax: (212) 541-4630

*Attorneys for Plaintiff*

## INTRODUCTION

Plaintiff I.B.I Volcano Investments LLC ("I.B.I. Volcano" or "Lender" or "Plaintiff") submits this Memorandum of Law in support of its Motion for Summary Judgment in Lieu of Complaint pursuant to CPLR § 3213. The facts here are straightforward and uncontested. On June 12, 2024, Defendants Mario Garcia, Jr. ("Garcia"), Mark Levey ("Levey"), and Robert Winslow ("Winslow," together with Garcia and Levey, the "Guarantors," and each individually, a "Guarantor") executed a guaranty agreement (the "Guaranty," as defined below) providing for unconditional guaranty of payments under a secured promissory note between Lender and nonparty Validus Broker Dealer Investment Management Company, LLC ("Borrower"). When Borrower defaulted on its obligations under the loan agreement and, after a notice of default to Guarantors, Guarantors failed to pay amounts due despite their obligations under the Guaranty, Guarantors breached that agreement. Therefore, the Court should enter summary judgment in favor of Plaintiff in the amount of $2,527,829.00, which is the amount due to Plaintiff under the loan agreement, plus costs and fees, including reasonable attorneys' fees.

## UNDISPUTED FACTS

### The Secured Promissory Note

Lender and Borrower executed a written Secured Promissory Note ("Note") and a Security and Pledge Agreement, both dated June 12, 2024 in favor of Lender. Sapir Affirmation ("Sapir Aff."), Ex. 1 (Note); Ex. 2 (Security and Pledge Agreement). Under the Note, Lender loaned Borrower $2,350,000.00, at an annual interest rate of thirteen percent (13%) (the "Interest Rate"). Sapir Aff., Ex. 1, § A. In return, Borrower promised to make to make (i) monthly interest payments on the first day of each month, and (ii) payment of the entire outstanding principal

2

Case 1:25-cv-07928    Document 1-1    Filed 09/24/25    Page 58 of 79

balance of the Note plus all other amounts payable under the Note on the Maturity Date. *Id*., §§

B(1), (2), D.

In addition to setting forth Borrower's payment obligations, the Note contains provisions

concerning the consequences in the event Borrower fails to meet those obligations. These

consequences include that:

- An Event of Default occurs where "Borrower fails to pay (a) any principal amount of the Loan when due; or (b) interest or any other amount due and owing hereunder when due and, in either case, if such failure continues for five (5) calendar days." *Id.* § K.1.

- "All principal and installments of interest shall bear interest from the date that said payments are due and unpaid or from the date of occurrence of any other Event of Default (as hereinafter defined) under this Note, the Security Agreement, or any other Loan Document, at a rate equal to the Interest Rate *plus* five percent (5%) (the '***Default Rate***')." *Id.* § E (emphasis in original).

- "Lender may collect a late charge not to exceed an amount equal to five percent (5%) of any installment which is not paid within ten (10) calendar days after the due date thereof, to cover the extra expense involved in handling delinquent payments, provided that collection of said late charge shall not be deemed a waiver by Lender of any of its rights under this Note." *Id.* § G(2).

Further, Borrower also agreed to pay the "Lender [] an additional fully earned and non-

refundable Origination Fee in an amount equal to two percent (2%) on the principal balance of the

Loan" for extending the Maturity Date under the Notes. *Id*. § B(4).

**The Guaranty**

Guarantors fully executed a written guaranty agreement, dated June 12, 2024, for the

benefit of I.B.I. Volcano. *Id*., Ex. 3. The Guaranty "is a legal, valid and binding instrument,

enforceable against [each Guarantor] in accordance with its terms." *Id.*, § 21(a). The Guaranty

contains the following provisions that are material to this action:

- "Guarantor hereby absolutely, unconditionally and irrevocably guarantees to Lender, the full and prompt payment in full (and not merely the collectability) of the obligations of Borrower from time to time arising under the Note (as the same may be extended, modified, renewed or consolidated) and the Security and Pledge Agreement, dated as of even date herewith . . . or otherwise with respect to the due and punctual payment of (i)

3

the principal of and premium, if any, and interest on the Loan (including interest accruing during the pendency of any bankruptcy, insolvency, receivership or other similar proceeding, regardless of whether allowed or allowable in such proceeding), when and as due, whether at maturity, by acceleration, upon one or more dates set for prepayment or otherwise . . ." *Id*. § 2.

- "Guarantor's obligations under this Guaranty are completely independent of the obligations of the Borrower and, except as may be limited by the express terms of this Guaranty, constitute a direct, unconditional guaranty of payment and not merely a guaranty of collection." *Id*. § 4.

- "Guarantor hereby knowingly, voluntarily, intentionally, unconditionally and irrevocably waives all rights to require Lender to (i) proceed against any of the Borrower or any other guarantor of the Borrower's payment or performance with respect to any Guaranteed Amount. . ." *Id*. § 5(b).

- "Guarantor hereby knowingly, voluntarily, intentionally, unconditionally and irrevocably waives any and all defenses of any and every kind to any action or proceeding brought to enforce this Guaranty or any part of this Guaranty either at law or in equity . . ." *Id*. § 5(c); *see also id.* § 22 (Guarantor "KNOWINGLY, VOLUNTARILY, INTENTIONALLY, UNCONDITIONALLY AND IRREVOCABLY WAIVES . . . (II) THE RIGHT, IN ANY SUCH ACTION OR PROCEEDING, TO INTERPOSE DEFENSES . . .") (capitalization in original).

- "Event of Default" includes "a default in the payment of any sums when due under this Guaranty." *Id*. § 11(b).

- Plaintiffs are entitled to recover attorneys' fees and other expenses from Guarantor "in connection with or related to (a) any breach by Guarantor (or any person or entity constituting Guarantor) of any of the terms, provisions, covenants or conditions of this Guaranty . . ." *Id*. § 14.

- The Guaranty is governed by "the laws of the State of Delaware without reference to principles of conflicts of law." *Id*. § 15(a).

- Guarantors agreed that any proceeding to enforce the Guaranty "MAY AT LENDER'S OPTION BE INSTITUTED IN ANY FEDERAL OR STATE COURT IN THE STATE OF NEW YORK, AND GUARANTOR WAIVES ANY OBJECTIONS WHICH IT MAY NOW OR HEREAFTER HAVE BASED ON VENUE AND/OR FORUM NON CONVENIENS OF ANY SUCH SUIT, ACTION OR PROCEEDING, AND GUARANTOR HEREBY IRREVOCABLY SUBMITS TO THE JURISDICTION OF ANY SUCH COURT IN ANY SUIT, ACTION OR PROCEEDING." *Id*. § 15(b) (capitalization in original).

4

**Borrower Breached Its Obligations Under The Note**

The Maturity Date under the Note was initially December 12, 2024, but Borrower made an extension payment pursuant to the Note (*see id*., Ex.1, § B(4)), extending the Maturity Date to June 12, 2025. Sapir Aff. ¶ 10. After the extension was agreed upon, Borrower made interest payments (though often late) under the Note until May 23, 2025, but failed to make the interest payment due in June 2025 and has made no further interest payments since. *Id*. ¶ 11. Borrower also failed to pay the balance of the loan due on or before the extended Maturity Date of June 12, 2025. *Id*. ¶ 12. Now, the Maturity Date under the Note has come and gone without further extension or repayment from Borrower (*Id*., ¶ 15). All sums under the Note are now due, including repayment of the principal and remaining interest, default interest, and late charges. *Id*. ¶¶ 15, 16, Ex.1 §§ B(4), E, G(2), K, K(1).

**Guarantors Breached Their Obligations Under The Guaranty**

On July 14, 2025, Plaintiff sent Guarantors a Notice of Default, Demand for Payment, Notice of Initiation of Litigation and Notice of Reservation of Rights ("Default Notice"). *Id*., Ex. 4. Therein, Guarantors were notified of Borrower's default in its payments under the Note, asked to comply with the Guaranty by paying the then outstanding amount of $2,520,024.00 within 15 days of receipt of the Default Notice, and informed that Guarantors' failure to comply with the Guaranty within the 15-day timeframe would result in legal action. *Id*. Guarantors failed to pay the sums then due and owing to Plaintiff under the Guaranty. Sapir Aff., ¶ 14. At present, because all sums of principal and interest under the Note, as well as late charges, are currently due

5

from Borrower, Guarantors are also liable for the same amount under the Guaranty.[1] *Id*., Ex. 3, §

2.

      As a result of Borrower's breach of the Note and Guarantors' failure to make payment

under the Guaranty, the amount now due and owing to Plaintiff from Guarantors is as follows:

- The entire principal amount, which is currently due and owing (as of August 4, 2025), totals $2,350,000.00. *Id*. ¶ 16(b);

- The accrued interest due on the Note, with interest calculated at the default rate of 18% under the Note (*see id*., Ex. 1, §§ A, E), as of August 4, 2025, totals $169,361.00. *Id*. ¶ 16c); and

- Borrower is obligated to pay late charges in connection with payments made more than ten (10) days after they were due (*id*., Ex. 1, § G(2)), which, as of August 4, 2025, total $8,468.00. *Id*. ¶ 16(d).

      Based on the foregoing, the total amount now due and owing from Guarantors is thus

**$2,527,829.00** (*see id.*, Ex.5), plus Plaintiff's attorneys' fees and other expenses in connection

with Guarantors' breach of the Guaranty by failure to pay the sums due, to be determined later (as

discussed below). *See infra*, at 9-10.

## **ARGUMENT**

### I.  **Legal Standard**

      A motion for summary judgment in lieu of a complaint is available when the action is

based upon an instrument for the payment of money only or upon a judgment. CPLR § 3213. A

defendant's "unconditional guaranty is an instrument for the payment of 'money only' within the

meaning of CPLR 3213." *Cooperatieve Centrale Raiffeisen-Boerenleenbank B.A. v. Navarro*, 25

N.Y.3d 485, 492 (2015) (citations omitted). "To meet its prima facie burden on its summary

judgment motion, [Plaintiffs] must prove the existence of the guaranty, the underlying debt and

---

[1]    Such sums are due from Guarantor "without demand by Lender." Sapir Aff., Ex. 3, § 5(a).

the guarantor's failure to perform under the guaranty." *Id*. (citations omitted). "Thereafter, the burden shifts to the defendant to establish, by admissible evidence, the existence of a triable issue with respect to a bona fide defense." *Id.* (quotations and citations omitted).

## II.    Plaintiff Is Entitled To Summary Judgment For Breach Of Guaranty, An Instrument For Payment Of Money Only

"Under Delaware law," which governs the Guaranty (Sapir Aff., Ex. 3, § 15(a)), "a contract of guaranty is the promise to answer for the payment of some debt or for the performance of some obligation by another on the default of that third person who is liable in the first instance." *Falco v. Alpha Affiliates, Inc*., No. Civ. A. 97-494 (MMS), 1997 WL 782011, at *5 (D. Del. Dec. 10, 1997). The guaranty is a separate contract involving duties and responsibilities apart from those underlying the contract to which the guaranty is collateral. *Jones Motor Co., Inc. v. Teledyne, Inc*., 690 F. Supp. 310, 313 (D. Del 1988).

"A guaranty may be either conditional or unconditional." *Fanatics Retail Group (Dreams), LLC v. Truax*, No. 20-0794 (MN), 2020 WL 7042873, at *3 (D. Del. Dec. 1, 2020) (citations omitted). "An unconditional guaranty is one 'whereby the guarantor agrees to pay or perform a contract on default of the principal without limitation.'" *Id.* "Such a guaranty constitutes 'an absolute undertaking to pay a debt at maturity or perform an agreement if the principal does not pay or perform.'" *Id.* And, "there is no limitation on the right of the creditor to bring an action directly against the guarantor when the principal commits a default." *Id.*; *see also Ajax Rubber Co. v. Gam*, 151 A. 828, 830 (Del. Super. Ct. 1923) (stating that in an absolute guaranty, "the liability of the guarantor is fixed by the failure of the principal debtor to pay at maturity").

"To recover on an absolute guaranty, a plaintiff must prove: (1) an absolute and unconditional guaranty; (2) the underlying debt; and (3) the guarantor's failure to perform under

7

the guaranty." *Fanatics Retail Group (Dreams)*, 2020 WL 7042873 at \*3 (citations omitted); *see also A.G. Barr v. Agribusiness Partners Int'l, L.P.*, No. Civ. A. 02C–09–120–JR, 2003 WL 1873848, at \*2 n.11 (Del. Super. Ct. Apr. 14, 2003) ("To state a valid claim on an unconditional guaranty of payment, a creditor must allege the existence of the guaranty delivered to the creditor securing repayment of a debt which is in default."). Here, Plaintiff has established each element, which cannot be disputed.

*First*, Guarantors executed the written Guaranty, pursuant to which it "absolutely, unconditionally and irrevocably guarantees to Lender, the full and prompt payment in full (and not merely the collectability) of the obligations of Borrower . . . with respect to the due and punctual payment of (i) the principal of and premium, if any, and interest on the Loan . . . when and as due, whether at maturity, by acceleration, upon one or more dates set for prepayment or otherwise . . . . and (iii) all other agreements, duties, indebtedness, obligations and liabilities of any kind of Borrower under, out of, or in connection with the Loan Documents . . ." Sapir Aff., Ex. 3, § 2. These provisions unequivocally include "an unconditional obligation to pay" all amounts owed under the Guaranty, and require "no additional performance by [Plaintiff] as a condition precedent to payment or otherwise made [Guarantors'] promise to pay something other than unconditional." *iPayment, Inc. v. Silverman*, 192 A.D.3d 586, 587 (1st Dep't 2021) (quoting *Park Union Condominium v. 910 Union St., LLC*, 140 A.D.3d 673, 674 (1st Dep't 2016)); *see also Fanatics Retail Group*, 2020 WL 7042873 at \*3 (granting motion for judgment on the pleadings where guarantor "signed an absolute and unconditional guaranty" and admitted that he did not "pay the Note when due" and admitted that he "failed to fulfill his obligation under the guaranty by refusing to pay the amount outstanding under the Note when Comet failed to do so.").

8

*Second*, and as detailed above, Borrower executed the Note and failed to make payments thereunder, including repayment of the principal and certain interest, default interest, and late and extension fees. Sapir Aff., Ex. 1, ¶ 15. This debt is precisely the obligation to which the Guaranty applies. *Id*., Ex. 3 § 2.

*Third*, Guarantors breached their obligations under the Guaranty by failing to pay the debt it guaranteed. *Id*., ¶¶ 14, 15, 16, 17, 18.

Moreover, Guarantors further, "knowingly, voluntarily, intentionally, unconditionally and irrevocably waive[d] any and all defenses of any and every kind to any action or proceeding brought to enforce this Guaranty or any part of this Guaranty either at law or in equity . . ." Sapir Aff., Ex. 3, §§ 5(c), 22. Such waivers are valid under Delaware law. *Addy v. Piedmonte*, Civ. Act. No. 3571-VCP, 2009 WL 707641, at *16 (Del. Ch. Mar. 18, 2009) (holding waiver of defenses in guaranty to be enforceable).

Because Guarantors are unable to establish "the existence of a triable issue with respect to a bona fide defense," *Navarro*, 25 N.Y.3d at 492, summary judgment should be granted in favor of Plaintiff. *See iPayment*, 192 A.D.3d at 597 ("Plaintiff established its entitlement to summary judgment by submitting defendants' guaranty and evidence of their failure to pay.").

Accordingly, Plaintiff is entitled to summary judgment against Guarantors in connection with its default under the Guaranty in the amounts set forth above (*supra*, 6), totaling $2,527,829.00, plus Plaintiffs' attorneys' fees and other expenses in connection with Guarantors' breach of the Guaranty, to be determined later (as discussed below)

### III. Plaintiff Is Further Entitled To Legal Fees And Expenses And Requests Determination Of Those Sums Be Severed

Under CPLR § 603, the Court may "order a severance of claims, or may order a separate trial of any claim, or of any separate issue" in order to avoid "prejudice" to the plaintiffs. *See*

9

*also Brosnick v. Brisman*, 30 A.D.3d 224, 224 (1st Dep't 2006) (affirming referral of attorneys' fees issue to special referee in CPLR § 3213 motion).

The Guaranty provides that Guarantors "shall defend, indemnify and hold Lender … harmless from and against any and all loss, cost, expense, liability or obligation (including, without limitation, reasonable attorneys' fees and disbursements actually incurred) ***that Lender may incur in connection with or related to (a) any breach by Guarantor (or any person or entity constituting Guarantor) of any of the terms, provisions, covenants or conditions of this Guaranty***, …" Sapir Aff., Ex. 3 § 14 (emphasis added). Guarantors are thus liable for all reasonable costs and fees (including reasonable attorneys' fees) incurred by Plaintiff concerning Guarantors' breach of their obligations under the Guaranty. *See Edgewater Growth Capital Partners LP v. H.I.G. Capital, Inc.*, 68 A.3d 197, 238-42 (Del. Chan. 2013) (awarding lender attorneys' fees and costs under Limited Guaranty that required the borrower to, "pay, on demand, all attorneys' fees and all others costs and expenses which may be incurred by Agent or the Lender Group in connection with the enforcement of this Guaranty or in any way arising out of, or consequential to, the protection, assertion, or enforcement of the Guarantied Obligations . . .").

Plaintiff respectfully requests that the Court enter judgment on the principal amounts due under the Guaranty, along with liability for Plaintiff's attorneys' fees and costs, but that a determination of the amount of such attorneys' fees and costs be severed and scheduled for subsequent determination. Plaintiff should not suffer prejudicial delay in their right to immediate entry of judgment on the principal balances due under the Guaranty while it awaits a determination of the exact amount of its attorneys' fees and expenses. Plaintiff therefore requests that the determination of the amount of its attorneys' fees and expenses be severed.

10

## **CONCLUSION**

For the foregoing reasons, Plaintiff respectfully requests that its Motion for Summary

Judgment in Lieu of Complaint against Guarantors be granted in its entirety and that the Court

issue an Order:

a) Directing immediate entry of judgment for Plaintiff and against Guarantors, pursuant to the Guaranty, in the amount of $2,527,829.00.

b) Directing judgment for Plaintiff and against the Guarantors for Plaintiff's attorneys' fees and expenses incurred to enforce the Guaranty and, pursuant to CPLR § 603, severing the issue of the amount of those fees and expenses and directing an inquest for determination of same; and

c) For such other and further relief as this Court may deem just and proper.

Dated:      August 5, 2025
            New York, New York

                    BRYAN CAVE LEIGHTON PAISNER LLP

                    By:     /s/ Chris LaRocco
                            Chris LaRocco
                            Anoop Sadanandan
                            1290 Avenue of the Americas
                            New York, New York 10104
                            (212) 541-2000
                            chris.larocco@bclplaw.com
                            anoop.sadanandan@bclplaw.com

                            *Attorneys for Plaintiffs*

11

UCS-840
(rev. 12/16/2024)

# REQUEST FOR JUDICIAL INTERVENTION

**SUPREME** COURT, COUNTY OF **NEW YORK** ▼

Index No: _____    Date Index Issued: _____

| For Court Use Only: |
|---|
| IAS Entry Date |
| |
| Judge Assigned |
| |
| RJI Filed Date |

**CAPTION**    Enter the complete case caption. Do not use et al or et ano. If more space is needed, attach a caption rider sheet.

I.B.I VOLCANO INVESTMENTS LLC

Plaintiff(s)/Petitioner(s)

-against-

MARIO GARCIA, JR.; MARK LEVEY; and ROBERT WINSLOW

Defendant(s)/Respondent(s)

**NATURE OF ACTION OR PROCEEDING**    Check only one box and specify where indicated.

**COMMERCIAL**
- ○ Business Entity (includes corporations, partnerships, LLCs, LLPs, etc.)
- ◉ Contract
- ○ Insurance (where insurance company is a party, except arbitration)
- ○ UCC (includes sales and negotiable instruments)
- ○ Other Commercial (*specify*): _____
  **NOTE:** *For Commercial Division assignment requests pursuant to 22 NYCRR 202.70(d), complete and attach the **COMMERCIAL DIVISION RJI ADDENDUM (UCS-840C).***

**TORTS**
- ○ Asbestos
- ○ Environmental (*specify*): _____
- ○ Medical, Dental or Podiatric Malpractice
- ○ Motor Vehicle
- ○ Products Liability (*specify*): _____
- ○ Other Negligence (*specify*): _____
- ○ Other Professional Malpractice (*specify*): _____
- ○ Other Tort (*specify*): _____

**SPECIAL PROCEEDINGS**
- ○ Child-Parent Security Act (*specify*): ○ Assisted Reproduction ○ Surrogacy Agreement
- ○ CPLR Article 75 – Arbitration  [see **NOTE** in **COMMERCIAL** section]
- ○ CPLR Article 78 – Proceeding against a Body or Officer
- ○ Election Law
- ○ Extreme Risk Protection Order
- ○ MHL Article 9.60 – Kendra's Law
- ○ MHL Article 10 – Sex Offender Confinement (*specify*): ○ Initial ○ Review
- ○ MHL Article 81 (Guardianship)
- ○ Other Mental Hygiene (*specify*): _____
- ○ Other Special Proceeding (*specify*): _____

**MATRIMONIAL**
- ○ Contested
  **NOTE:** *If there are children under the age of 18, complete and attach the* **MATRIMONIAL RJI ADDENDUM (UCS-840M).**
  *For Uncontested Matrimonial actions, use the Uncontested Divorce RJI (**UD-13**).*

**REAL PROPERTY**    Specify how many properties the application includes: _____
- ○ Condemnation
- ○ Mortgage Foreclosure (*specify*): ○ Residential ○ Commercial
  Property Address: _____
  **NOTE:** *For Mortgage Foreclosure actions involving a one to four-family, owner-occupied residential property or owner-occupied condominium, complete and attach the* **FORECLOSURE RJI ADDENDUM (UCS-840F).**
- ○ Partition
  **NOTE:** *Complete and attach the* **PARTITION RJI ADDENDUM (UCS-840P).**
- ○ Tax Certiorari (*specify*):    Section: _____ Block: _____ Lot: _____
- ○ Tax Foreclosure
- ○ Other Real Property (*specify*): _____

**OTHER MATTERS**
- ○ Certificate of Incorporation/Dissolution  [see **NOTE** in **COMMERCIAL** section]
- ○ Emergency Medical Treatment
- ○ Habeas Corpus
- ○ Local Court Appeal
- ○ Mechanic's Lien
- ○ Name Change/Sex Designation Change
- ○ Pistol Permit Revocation Hearing
- ○ Sale or Finance of Religious/Not-for-Profit Property
- ○ Other (*specify*): _____

**STATUS OF ACTION OR PROCEEDING**    Answer YES or NO for every question and enter additional information where indicated.

|  | YES | NO |  |  |
|---|---|---|---|---|
| Has a summons and complaint or summons with notice been filed? | ◉ | ○ | If yes, date filed: | 08/05/2025 |
| Has a summons and complaint or summons with notice been served? | ○ | ◉ | If yes, date served: | _____ |
| Is this action/proceeding being filed post-judgment? | ○ | ◉ | If yes, judgment date: | _____ |

**NATURE OF JUDICIAL INTERVENTION**    Check one box only and enter additional information where indicated.

- ○ Infant's Compromise
- ○ Extreme Risk Protection Order Application
- ○ Note of Issue/Certificate of Readiness
- ○ Notice of Medical, Dental or Podiatric Malpractice    Date Issue Joined: _____
- ◉ Notice of Motion    Relief Requested: Summary Judgment in Lieu of Complaint    Return Date: _____
- ○ Notice of Petition    Relief Requested: _____    Return Date: _____
- ○ Order to Show Cause    Relief Requested: _____    Return Date: _____
- ○ Other Ex Parte Application    Relief Requested: _____
- ○ Partition Settlement Conference
- ○ Request for Preliminary Conference
- ○ Residential Mortgage Foreclosure Settlement Conference
- ○ Waiver of Court Costs, Fees, and Expenses
- ○ Writ of Habeas Corpus
- ○ Other (specify): _____

| RELATED CASES | List any related actions. For Matrimonial cases, list any related criminal or Family Court cases. If none, leave blank. If additional space is required, complete and attach the **RJI ADDENDUM (UCS-840A)**. | | | | |
|---|---|---|---|---|---|
| **Case Title** | **Index/Case Number** | **Court** | **Judge (if assigned)** | **Relationship to instant case** | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |

| PARTIES | For parties without an attorney, check the "Un-Rep" box and enter the party's address, phone number and email in the space provided. If additional space is required, complete and attach the **RJI ADDENDUM (UCS-840A)**. | | | |
|---|---|---|---|---|

| Un-Rep | Parties<br>List parties in same order as listed in the caption and indicate roles (e.g., plaintiff, defendant, 3rd party plaintiff, etc.) | Attorneys and Unrepresented Litigants<br>For represented parties, provide attorney's name, firm name, address, phone and email. For unrepresented parties, provide party's address, phone and email. | Issue Joined<br>For each defendant, indicate if issue has been joined. | Insurance Carriers<br>For each defendant, indicate insurance carrier, if applicable. |
|---|---|---|---|---|
| ☐ | Name: I.B.I VOLCANO INVESTMENTS LLC<br>Role(s): Plaintiff | Chris LaRocco<br>Anoop Sadanandan<br>1290 Avenue of the Americas<br>New York, New York 10104<br>(212) 541-2000<br>chris.larocco@bclplaw.com  anoop.sadanandan@bclplaw.com | ◯ YES   ◯ NO | |
| ☒ | Name: MARIO GARCIA, JR.<br>Role(s): Defendant | Mario Garcia, Jr.:<br>3504 Cragmont Drive, Suite 100<br>Tampa, FL 33619<br>Email: mgarcia@wecontrolpain.com | ◯ YES   ⦿ NO | |
| ☒ | Name: MARK LEVEY<br>Role(s): Defendant | Mark Levey<br>1810 West Kennedy Blvd.<br>Tampa, FL 33606<br>Email: mark@levey.org | ◯ YES   ⦿ NO | |
| ☒ | Name: ROBERT WINSLOW<br>Role(s): Defendant | Robert Winslow<br>8 Isle of Sicily<br>Winter Park, FL 32789<br>Email: bobw.global@gmail.com | ◯ YES   ⦿ NO | |
| ☐ | Name:<br>Role(s): | | ◯ YES   ◯ NO | |
| ☐ | Name:<br>Role(s): | | ◯ YES   ◯ NO | |
| ☐ | Name:<br>Role(s): | | ◯ YES   ◯ NO | |
| ☐ | Name:<br>Role(s): | | ◯ YES   ◯ NO | |
| ☐ | Name:<br>Role(s): | | ◯ YES   ◯ NO | |
| ☐ | Name:<br>Role(s): | | ◯ YES   ◯ NO | |
| ☐ | Name:<br>Role(s): | | ◯ YES   ◯ NO | |
| ☐ | Name:<br>Role(s): | | ◯ YES   ◯ NO | |
| ☐ | Name:<br>Role(s): | | ◯ YES   ◯ NO | |
| ☐ | Name:<br>Role(s): | | ◯ YES   ◯ NO | |
| ☐ | Name:<br>Role(s): | | ◯ YES   ◯ NO | |

**I AFFIRM UNDER THE PENALTY OF PERJURY THAT, UPON INFORMATION AND BELIEF, THERE ARE NO OTHER RELATED ACTIONS OR PROCEEDINGS, EXCEPT AS NOTED ABOVE, NOR HAS A REQUEST FOR JUDICIAL INTERVENTION BEEN PREVIOUSLY FILED IN THIS ACTION OR PROCEEDING.**

Dated: **08/05/2025**

_____
Signature

_____          _____
4382131                                                    Chris LaRocco
Attorney Registration Number                      Print Name



**New York State Unified Court System**            nycourts.gov

# Request for Judicial Intervention
# Commercial Division Addendum

**UCS-840C** (04/2024)
Page **1** of **2**
nycourthelp.gov

**Supreme Court**
**County of NEW YORK** ▾

| **Plaintiff/Petitioner** (persons/entities that started the case)**:** | **Index #:** |
|---|---|
| I.B.I VOLCANO INVESTMENTS LLC | |
| **Defendant/Respondent** (persons/entities the case is against)**:** | |
| MARIO GARCIA, JR.; MARK LEVEY; and ROBERT WINSLOW | |

**Plaintiff/Petitioner's cause(s) of action** [check all that apply]:

☒ Breach of contract or fiduciary duty, fraud, misrepresentation, business tort (e.g., unfair competition), or statutory and/or common law violation where the breach or violation is alleged to arise out of business dealings (e.g., sales of assets or securities; corporate restructuring; partnership, shareholder, joint venture, and other business agreements; technology transactions and/or commercial disputes involving or arising out of technology; trade secrets; restrictive covenants; and employment agreements not including claims that principally involve alleged discriminatory practices)

☐ Transactions governed by the Uniform Commercial Code, excluding those concerning individual cooperative or condominium units

☐ Transactions involving commercial real property, including Yellowstone injunctions and excluding actions for the payment of rent only

☐ Shareholder derivative actions (without consideration of the monetary threshold)

☐ Commercial class actions (without consideration of the monetary threshold)

☐ Business transactions involving or arising out of dealings with commercial banks and other financial institutions

☐ Internal affairs of business organizations

☐ Malpractice by accountants or actuaries, and legal malpractice arising out of representation in commercial matters

☐ Environmental insurance coverage

☐ Commercial insurance coverage (e.g., directors and officers, errors and omissions, and business interruption coverage)

☐ Dissolution of corporations, partnerships, limited liability companies, limited liability partnerships and joint ventures (without consideration of the monetary threshold)

☐ Applications to stay or compel arbitration and affirm or disaffirm arbitration awards and related injunctive relief pursuant to CPLR Article 75 involving any of the foregoing enumerated commercial issues (where the applicable agreement provides for the arbitration to be heard outside the United States, the monetary threshold set forth in 22 NYCRR 202.70(a) shall not apply)

🏃 **ADA Accommodations**
ada@nycourts.gov     **Spoken or Sign Language Interpreters**
interpreter@nycourts.gov    COURT Help    **1-800-COURT-NY**
**(268-7869)**

1 of 2

**UCS-840C** (12/2023)          Page **2** of **2**          **Index #:** _____

Plaintiff/Petitioner's claim for compensatory damages, excluding punitive damages, interest, costs, and counsel fees claimed: $ 2,527,829.00 _____

Plaintiff/Petitioner's claim for equitable or declaratory relief [brief description]:

Defendant/Respondent's counterclaims, including claims for monetary relief [brief description]:

I request that this case is assigned to the Commercial Division. I certify that the case meets the Commercial Division's jurisdictional requirements as set forth in 22 NYCRR 202.70(a), (b) and (c).

Dated: _____08/05/2025_____          _____
                                                              Signature
                                        _____
                                                  **Chris LaRocco**
                                                    Print Name



P24890358

VERIFIED RETURN OF SERVICE

SUPREME COURT NEW YORK COUNTY STATE OF NEW YORK
**654641/2025   10/27/2025**


PLAINTIFF :
**I.B.I. VOLCANO INVESTMENTS LLC**
VS.
DEFENDANT :
**MARIO GARCIA, JR., ET AL.,**

For:
**BRYAN CAVE LEIGHTON PAISNER LLP**
1290 AVENUE OF AMERICAS
NEW YORK, NY 10104

RECEIVED BY PROCESS SERVER ON **08/20/2025** TO BE SERVED ON **MARIO GARCIA, JR.**.

I, **MICHAEL FRANTZ**, DO HEREBY AFFIRM THAT ON **08/25/2025** AT **6:25 PM**, I:

**INDIVIDUAL/PERSONAL:** SERVED THE WITHIN NAMED **DEFENDANT** BY DELIVERING A TRUE COPY OF THE **AFFIRMATION IN SUPPORT, MEMORANDUM OF LAW, NOTICE OF ELECTRONIC FILING, NOTICE OF MOTION FOR SUMMARY JUDGMENT IN LIEU OF COMPLAINT, SUMMONS, REQUEST FOR JUDICIAL INTERVENTION, REQUEST FOR JUDICIAL INTERVENTION COMMERCIAL DIVISION ADDENDUM AND EXHIBITS** WITH THE DATE AND HOUR OF SERVICE ENDORSED THEREON BY ME TO **MARIO GARCIA, JR.**, AT THE ADDRESS OF 628 BALIBARY RD, , APOLLO BEACH, FL 33572, AND INFORMED SAID PERSON OF THE CONTENTS THEREOF, PURSUANT TO F.S. 48.031

PHYSICAL DESCRIPTION OF PERSON SERVED:

GENDER: **MALE**          PERCEIVED RACE: **HISPANIC** HAIR: **SALT & PEPPER**
APP.AGE: **45**           APP. HT: **6'**          APP. WT: **225**
OTHER IDENTIFYING FEATURES


MILITARY STATUS: BASED ON INQUIRY OF PARTY SERVED, DEFENDANT IS NOT IN THE MILITARY SERVICE OF THE UNITED STATES OF AMERICA.


ADDITIONAL INFORMATION PERTAINING TO THIS SERVICE:

I AFFIRM THIS 27TH DAY OF AUGUST 2025, UNDER THE PENALTIES OF PERJURY UNDER THE LAWS OF NEW YORK, WHICH MAY INCLUDE A FINE OR IMPRISONMENT, THAT THE FOREGOING IS TRUE, AND I UNDERSTAND THAT THIS DOCUMENT MAY BE FILED IN AN ACTION OR PROCEEDING IN A COURT OF LAW.

MICHAEL FRANTZ
SPS#18-818916
Lexitas Process Service
20 North Orange Ave # 700
Orlando, FL 32801



P24823904

VERIFIED RETURN OF SERVICE

SUPREME COURT NEW YORK COUNTY STATE OF NEW YORK
**654641/2025  10/27/2025**

PLAINTIFF :
**I.B.I. VOLCANO INVESTMENTS LLC**
VS.
DEFENDANT :
**MARIO GARCIA, JR., ET AL.,**

For:
**BRYAN CAVE LEIGHTON PAISNER LLP**
1290 AVENUE OF AMERICAS
NEW YORK, NY 10104

RECEIVED BY PROCESS SERVER ON **08/11/2025** TO BE SERVED ON **ROBERT WINSLOW.**

I, **ANTHONY KO**, DO HEREBY AFFIRM THAT ON **09/09/2025** AT **9:14 PM**, I:

**POSTED:** POSTED THE DOCUMENT TO THE WITHIN NAMED **DEFENDANT** BY POSTING IN A CONSPICUOUS
PLACE A TRUE COPY OF THE **AFFIRMATION IN SUPPORT, MEMORANDUM OF LAW, NOTICE OF ELECTRONIC
FILING, NOTICE OF MOTION FOR SUMMARY JUDGMENT IN LIEU OF COMPLAINT, SUMMONS, REQUEST FOR
JUDICIAL INTERVENTION, REQUEST FOR JUDICIAL INTERVENTION COMMERCIAL DIVISION ADDENDUM
AND EXHIBITS** WITH THE DATE AND HOUR OF SERVICE ENDORSED THEREON BY ME AT THE WITHIN
NAMED PERSON'S USUAL PLACE OF ABODE, TO **POSTED,** , AT THE ADDRESS OF 8 ISLE OF SICILY, ,
WINTER PARK, FL 32789.

ADDITIONAL INFORMATION PERTAINING TO THIS SERVICE:
8 ISLE OF SICILY, , WINTER PARK: Attempts made - 8/11 - 8:22pm - no answer, ring
doorbell, only visible light on is a lamp towards the backside of the home. 8/12 -
7:15pm - no answer, neighbor outside stated they don't see them often and thinks they
travel. 8/18 - 7:40pm - no answer, ring doorbell no longer ringing. 8/20 - 11:50am - no
answer, ring doorbell no longer ringing. 8/22 server spoke with a neighbor who stated
that they travel a lot, server does not believe that they are in town. 9/5/25 @ 9:57 am
- No answer, ring doorbell working again. 9/9/25 @ 9:14 pm - POSTED

**I AFFIRM THIS 12TH DAY OF SEPTEMBER 2025, UNDER THE PENALTIES OF PERJURY UNDER THE LAWS
OF NEW YORK, WHICH MAY INCLUDE A FINE OR IMPRISONMENT, THAT THE FOREGOING IS TRUE, AND I
UNDERSTAND THAT THIS DOCUMENT MAY BE FILED IN AN ACTION OR PROCEEDING IN A COURT OF LAW.**

ANTHONY KO
CPS#0250/SPS#180029
Lexitas Process Service
20 North Orange Ave # 700
Orlando, FL 32801

Lexitas Job # 24823904

1 of 3

P24823904

Form 10 - AFFIDAVIT OF MAILING ONLY

**BRYAN CAVE LEIGHTON PAISNER LLP DAVID ORTIZ**
SUPREME COURT NEW YORK COUNTY STATE OF NEW YORK

I.B.I. VOLCANO INVESTMENTS LLC

PLAINTIFF

- vs -

MARIO GARCIA, JR., ET AL.,

DEFENDANT

Index No. **654641/2025**
Date Filed
Office No.
Court Date. **10/27/2025**

STATE OF NEW YORK, COUNTY OF NEW YORK     :SS:

**DOUGLAS PHILIP** being duly affirmed, deposes and says; I am over 18 years of age, not a party to this action, and reside in the State of New York.
That on **12th day of September, 2025** at a regular postal depository maintained by the United States of America, Deponent mailed the copy of

**AFFIRMATION IN SUPPORT, MEMORANDUM OF LAW, NOTICE OF ELECTRONIC FILING, NOTICE OF MOTION FOR SUMMARY JUDGMENT IN LIEU OF COMPLAINT, SUMMONS, REQUEST FOR JUDICIAL INTERVENTION, REQUEST FOR JUDICIAL INTERVENTION COMMERCIAL DIVISION ADDENDUM AND EXHIBITS**

**to ROBERT WINSLOW**
**the DEFENDANT at**
**8 ISLE OF SICILY**
**WINTER PARK FL 32789**

Copy mailed by first class mail marked PERSONAL & CONFIDENTIAL not indicating on the outside thereof, by return address or otherwise that said notice is from an attorney or concerns an action against the person to be served.

**COMMENTS: AS EVIDENCED BY CERTIFIXATE OF MAILING HEREWITH ATTACHED.**

Affirmed before me this
12TH day of SEPTEMBER, 2025

DOUGLAS PHILIP 2121937-DCWP
Lexitas - DCWP #2098109
1235 BROADWAY 2ND FLOOR
NEW YORK, NY 10001
Reference No: 9-BCL-L-24823904

**2a**



UNITED STATES
POSTAL SERVICE®

Certificate Of Mailing

This Certificate of Mailing provides evidence that mail has been presented to USPS® for mailing
This form may be used for domestic and international mail

From:

1235 Broadway

2nd Floor

New York, NY 10001

To:

ROBERT WINSLOW
8 ISLE OF SICILY
WINTER PARK, FL 32789

PS Form 3817, April 2007 PSN 7530-02-000-9065

2482390 4    883

FILED: NEW YORK COUNTY CLERK 09/17/2025 08:18 PM INDEX NO. 654641/2025
NYSCEF DOC. NO. 14 Case 1:25-cv-07928 Document 1-1 Filed 09/24/25 Page 75 of 79 9/17/2025

P24823888

VERIFIED RETURN OF SERVICE

SUPREME COURT NEW YORK COUNTY STATE OF NEW YORK
**654641/2025 10/27/2025**


PLAINTIFF :
**I.B.I. VOLCANO INVESTMENTS LLC**
VS.
DEFENDANT :
**MARIO GARCIA, JR., ET AL.,**

For:
**BRYAN CAVE LEIGHTON PAISNER LLP**
1290 AVENUE OF AMERICAS
NEW YORK, NY 10104

RECEIVED BY PROCESS SERVER ON **08/11/2025** TO BE SERVED ON **MARK LEVEY**.

I, **MICHAEL FRANTZ**, DO HEREBY AFFIRM THAT ON **09/09/2025** AT **12:20 PM**, I:

**BUSINESS-SUBSTITUTED:** SERVED THE WITHIN NAMED **DEFENDANT** BY DELIVERING A TRUE COPY OF THE
**AFFIRMATION IN SUPPORT, MEMORANDUM OF LAW, NOTICE OF ELECTRONIC FILING, NOTICE OF MOTION
FOR SUMMARY JUDGMENT IN LIEU OF COMPLAINT, SUMMONS, REQUEST FOR JUDICIAL INTERVENTION,
REQUEST FOR JUDICIAL INTERVENTION COMMERCIAL DIVISION ADDENDUM AND EXHIBITS** WITH THE
DATE AND HOUR OF SERVICE ENDORSED THEREON BY ME TO **REFUSED NAME, RECEPTIONIST,** AT THE
ADDRESS OF **MARK LEVEY,** 1810 WEST KENNEDY BLVD., , TAMPA, FL 33606, A PERSON EMPLOYED
THEREIN AND AUTHORIZED TO ACCEPT SERVICE AND INFORMED SAID PERSON OF THE CONTENTS
THEREOF.


PHYSICAL DESCRIPTION OF PERSON SERVED: GENDER: **FEMALE**    PERCEIVED RACE: **WHITE**
                                        APP.AGE: **EARLY 20'S** APP. HT: **5'5"**
OTHER IDENTIFYING FEATURES              HAIR: **DARK BROWN**
**GLASSES**                             APP. WT: **115**


ADDITIONAL INFORMATION PERTAINING TO THIS SERVICE: **ATTEMPTS MADE:8/12/25 @ 10:00 am** - This
address is a shared office space with multiple entities using the various suites and cubicles. The
receptionist did not recognize the name of the subject off hand but also stated that they have a
virtual mailbox for a number of companies and individuals. She stated that their system was down
at the moment and couldn't check if he has a box there. I left my card with her, so she could
contact when the system was back up or forward it to the subject if he did in fact use this
address for work. **8/13/25 @ 1:10 pm** - There was no one available at the reception desk at the time
of my attempt. She may have been on lunch. I did not receive a call back from them like she said.
**8/14/25 @ 11:10 am** - There was a different receptionist today and confirmed the subject works out
of this building. She attempted to call the subject's office line but got no answer. She said that
he doesn't have normal office hours and took another contact card to give to him. **8/25/25 @ 11:20
AM** - The subject was not working in the office at the time of my attempt. **9/02/25 @ 2:30 PM** -The
subject was not in the office at the time of my attempt. I left another business card with the
receptionist. **9/09/25 @ 12:20 PM** - Served: Name Refused (Receptionist) W/f, early 20's, 5'5", 115,
dark brown hair, glasses. The receptionist stated that the subject was not in today. I advised her
that I had been instructed by the issuing attorney to leave the documents in her care as the
subject has had ample opportunity to contact me to make other arrangements and has not.


I AFFIRM THIS 17TH DAY OF SEPTEMBER 2025, UNDER THE PENALTIES OF PERJURY UNDER THE LAWS
OF NEW YORK, WHICH MAY INCLUDE A FINE OR IMPRISONMENT, THAT THE FOREGOING IS TRUE, AND I
UNDERSTAND THAT THIS DOCUMENT MAY BE FILED IN AN ACTION OR PROCEEDING IN A COURT OF LAW.

MICHAEL FRANTZ
SPS#18-818916
Lexitas Process Service
20 North Orange Ave # 700 Orlando,
FL 32801

P24823888

Form 10 - AFFIDAVIT OF MAILING ONLY

BRYAN CAVE LEIGHTON PAISNER LLP DAVID ORTIZ
SUPREME COURT NEW YORK COUNTY STATE OF NEW YORK

| I.B.I. VOLCANO INVESTMENTS LLC | | Index No. **654641/2025** |
|---|---|---|
| | PLAINTIFF | Date Filed |
| - vs - | | Office No. |
| MARIO GARCIA, JR., ET AL., | | Court Date. **10/27/2025** |
| | DEFENDANT | |

STATE OF NEW YORK, COUNTY OF NEW YORK :SS:

**DOUGLAS PHILIP** being duly affirmed, deposes and says; I am over 18 years of age, not a
party to this action, and reside in the State of New York.
That on **10th day of September, 2025** at a regular postal depository maintained by the
United States of America, Deponent mailed the copy of

**AFFIRMATION IN SUPPORT, MEMORANDUM OF LAW, NOTICE OF ELECTRONIC FILING, NOTICE OF MOTION
FOR SUMMARY JUDGMENT IN LIEU OF COMPLAINT, SUMMONS, REQUEST FOR JUDICIAL INTERVENTION,
REQUEST FOR JUDICIAL INTERVENTION COMMERCIAL DIVISION ADDENDUM AND EXHIBITS**

**to MARK LEVEY
the DEFENDANT at
1810 WEST KENNEDY BLVD.
TAMPA FL 33606**

Copy mailed by first class mail marked PERSONAL & CONFIDENTIAL not indicating on the
outside thereof, by return address or otherwise that said notice is from an attorney or
concerns an action against the person to be served.

**COMMENTS: AS EVIDENCED BY CERTIFICATE OF MAILING HEREWITH ATTACHED.**

Affirmed before me this
11TH day of SEPTEMBER, 2025

DOUGLAS PHILIP 2121937-DCWP
Lexitas - DCWP #2098109
1235 BROADWAY 2ND FLOOR
NEW YORK, NY 10001
Reference No: 9-BCL-L-24823888

2a

SELENA INES ADAMES
NOTARY
NO. 01AD6365042
QUALIFIED IN
QUEENS COUNTY
COMM. EXP.
09-25-2025
PUBLIC
STATE OF NEW YORK

FILED: NEW YORK COUNTY CLERK 09/17/2025 08:18 PM    INDEX NO. 654641/2025
NYSCEF DOC. NO. 15    Case 1:25-cv-07928    Document 1-1    Filed 09/24/25    Page 77 of 79    RECEIVED NYSCEF: 09/17/2025

P24890416

VERIFIED RETURN OF SERVICE

SUPREME COURT NEW YORK COUNTY STATE OF NEW YORK
**654641/2025  10/27/2025**


PLAINTIFF :
**I.B.I. VOLCANO INVESTMENTS LLC**
VS.
DEFENDANT :
**MARIO GARCIA, JR., ET AL.,**

For:
**BRYAN CAVE LEIGHTON PAISNER LLP**
1290 AVENUE OF AMERICAS
NEW YORK, NY 10104

RECEIVED BY PROCESS SERVER ON **08/20/2025** TO BE SERVED ON **MARK LEVEY.**

I, **MICHAEL FRANTZ**, DO HEREBY AFFIRM THAT ON **09/10/2025** AT **12:20 PM**, I:

**POSTED**: POSTED THE DOCUMENT TO THE WITHIN NAMED **DEFENDANT** BY POSTING IN A CONSPICUOUS PLACE A TRUE COPY OF THE **AFFIRMATION IN SUPPORT, MEMORANDUM OF LAW, NOTICE OF ELECTRONIC FILING, NOTICE OF MOTION FOR SUMMARY JUDGMENT IN LIEU OF COMPLAINT, SUMMONS, REQUEST FOR JUDICIAL INTERVENTION, REQUEST FOR JUDICIAL INTERVENTION COMMERCIAL DIVISION ADDENDUM AND EXHIBITS** WITH THE DATE AND HOUR OF SERVICE ENDORSED THEREON BY ME AT THE WITHIN NAMED PERSON'S **LAST KNOWN ADDRESS, POSTED**, AT THE ADDRESS OF 1000 WATER ST, UNIT 2101, TAMPA, FL 33602.

ADDITIONAL INFORMATION PERTAINING TO THIS SERVICE:
1000 WATER ST, UNIT 2101, TAMPA: Attempts made - 8/21/25 @ 11:30 am - This building is access controlled, however there is a 24- hour concierge present. They confirmed the subject resides here. No answer at door and no sounds inside. Left a card at the door. 8/25/25 @ 5:25 pm - No answer at door and no sounds inside. The card left on my previous attempt had been removed. 8/27/25 @ 8:10 PM - No answer at door and no sounds inside. Left another card at the door. 8/30/25 @ 10:15 AM - No answer at door and no sounds inside. The card left on my previous attempt had been removed. 9/3/25 @ 8:00 am - No access to the building. There was no one at the concierge at the time of my attempt. 9/6/25 @ 9:00 am - No answer at door and no sounds inside. 9/10/25 @ 12:20 pm - POSTED

I AFFIRM THIS 11TH DAY OF SEPTEMBER 2025, UNDER THE PENALTIES OF PERJURY UNDER THE LAWS OF NEW YORK, WHICH MAY INCLUDE A FINE OR IMPRISONMENT, THAT THE FOREGOING IS TRUE, AND I UNDERSTAND THAT THIS DOCUMENT MAY BE FILED IN AN ACTION OR PROCEEDING IN A COURT OF LAW.


MICHAEL FRANTZ
SPS#18-818916
Lexitas Process Service
20 North Orange Ave # 700
Orlando, FL 32801

Form 10 - AFFIDAVIT OF MAILING ONLY

P24890416

**BRYAN CAVE LEIGHTON PAISNER LLP DAVID ORTIZ**
SUPREME COURT NEW YORK COUNTY STATE OF NEW YORK

I.B.I. VOLCANO INVESTMENTS LLC

PLAINTIFF

- vs -

MARIO GARCIA, JR., ET AL.,

DEFENDANT

Index No. **654641/2025**
Date Filed
Office No.
Court Date. **10/27/2025**

STATE OF NEW YORK, COUNTY OF NEW YORK    :SS:

**DOUGLAS PHILIP** being duly affirmed, deposes and says; I am over 18 years of age, not a party to this action, and reside in the State of New York.
That on **17th day of September, 2025** at a regular postal depository maintained by the United States of America, Deponent mailed the copy of

**AFFIRMATION IN SUPPORT, MEMORANDUM OF LAW, NOTICE OF ELECTRONIC FILING, NOTICE OF MOTION FOR SUMMARY JUDGMENT IN LIEU OF COMPLAINT, SUMMONS, REQUEST FOR JUDICIAL INTERVENTION, REQUEST FOR JUDICIAL INTERVENTION COMMERCIAL DIVISION ADDENDUM AND EXHIBITS**

**to MARK LEVEY**
**the DEFENDANT at**
**1000 WATER ST**
**UNIT 2101**
**TAMPA FL 33602**

Copy mailed by first class mail marked PERSONAL & CONFIDENTIAL not indicating on the outside thereof, by return address or otherwise that said notice is from an attorney or concerns an action against the person to be served.

**COMMENTS: AS EVIDENCED BY CERTIFICATE OF MAILING HEREWITH ATTACHED.**

Affirmed before me this
17TH day of SEPTEMBER, 2025

DOUGLAS PHILIP 2121937-DCWP
Lexitas - DCWP #2098109
1235 BROADWAY 2ND FLOOR
NEW YORK, NY 10001
Reference No: 9-BCL-L-24890416

2a

SELENA INES ADAMIES
NOTARY
NO. 01AD6365042
QUALIFIED IN
QUEENS COUNTY
COMM. EXP.
09-25-2025
PUBLIC
STATE OF NEW YORK

**UNITED STATES POSTAL SERVICE**®

## Certificate Of Mailing

This Certificate of Mailing provides evidence that mail has been presented to USPS® for mailing.
This form may be used for domestic and international mail.

From:

12:5 Broadway

2nd Floor

New York, NY 10001

To:

MARK LEVEY
1000 WATER ST, UNIT 2101
TAMPA, FL 33602

24890416    878

PS Form **3817**, April 2007  PSN 7530-02-000-9065